**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Larry CHRISTOPHER, Defendant–**
**Appellant.**

No. 02–4004.

United States Court of Appeals,
Sixth Circuit.

March 4, 2004.

James C. Lynch, Asst. U.S. Attorney, U.S. Attorney's Office, Cleveland, OH, for Plaintiff–Appellee.

Michael J. O'Shea, Cleveland, OH, for Defendant–Appellant.

Before: KENNEDY, DAUGHTREY, and COLE, Circuit Judges.

## OPINION

COLE, Circuit Judge.

Defendant–Appellant Larry Christopher was convicted of mail fraud, in violation of 18 U.S.C. § 1341, and was sentenced to a term of imprisonment of 33 months to be followed by three years of supervised release. First, Christopher argues that there was insufficient evidence to support his conviction on all four counts of the indictment because the government failed to prove that he possessed the specific intent to engage in mail fraud. Second, Christopher argues that he was entitled to a reduction in his offense level for acceptance of responsibility under United States Sentencing Guideline ("U.S.S.G.") § 3E1.1 (1998), and that he was entitled to a downward departure on various grounds. Finally, Christopher argues that the district court erred in its calculation of the loss attributable to his fraud. For the reasons below, we **AFFIRM** Christopher's conviction but **VACATE** his sentence and **REMAND** for resentencing consistent with this opinion.

## I. BACKGROUND

Christopher owned and operated a used computer equipment business known as Pinnacle Computer Resources ("Pinnacle"). Pinnacle bought and sold computer-

related equipment, and leased equipment for sublease to third parties. Pinnacle essentially served as a broker for certain types of computer equipment, including IBM "tape back-up" equipment.

During the late 1990s, Christopher leased computer equipment—primarily tape back-up machines—with the expressed intention of selling it even though he represented to the owners-lessors (the "lessors") that he would sublease the equipment to third parties. In some cases, Christopher also provided false information to the lessors, such as representing that he had subleased equipment to a specific third party when in actuality he had sold it to someone else. Christopher sold the leased computer equipment even though he did not possess title or authorization to sell it, and he conducted such sales without the knowledge or consent of the lessors.

When the leases ended. Christopher usually had three options: pay fair market value for the equipment, lease the equipment for another term, or return the equipment. At the time the leases were entered, the lessors and Christopher expected the equipment to depreciate rather rapidly in value. The equipment, however, bucked expectations and depreciated in value at an expectedly low rate because of two events: IBM's successor products to the equipment were not highly regarded in the marketplace and there was a high demand for the equipment due to the "Y2K" scare.

As the lease terms ended, Christopher was unable to pay fair market value to buy the equipment from the lessors because of insufficient funds, and he could not return the equipment because he had sold it. As to leases that had not ended, Christopher defaulted on the lease payments under some of the agreements. When the lessors sought to recover their equipment

after such defaults, they discovered that it had been sold. Some of the lessors sued Christopher for breach of the lease agreements, as well as other contractual defaults, and obtained default judgments against him.

## II. DISCUSSION

### A. Specific Intent

■ On appeal, Christopher argues that the Government failed to establish that he possessed the specific intent to violate 18 U.S.C. § 1341 and thus his conviction is unsupported by the evidence. *See United States v. Frost,* 125 F.3d 346, 354 (6th Cir.1997) ("A defendant does not commit mail fraud unless he possesses the specific intent to deceive or defraud."). Christopher argues that, at the time the leases were executed, he did not intend for any of the companies to lose money. Rather, he claims, he expected to buy the equipment at the end of the lease term, at what he and the lessors expected would be a low fair market value. Thus, argues Christopher, he never intended to defraud anyone of property. Christopher does not (and could not) argue, however, that he did not intend to deprive the companies of their legal title to the equipment in the short term. He argues simply that he did not intend for the lessors to lose any property in the long run.

We have previously rejected this type of argument. In *United States v. Daniel,* 329 F.3d 480 (6th Cir.2003), the defendant "borrowed" money under false pretenses from a company account for which he had investment responsibility—fully intending to pay it back—in order to cover his own personal investments in the short term. Like Christopher, he intended to deprive his victim of its money only in the short term (presumably also without that victim ever knowing it had happened). and, like

Christopher, he intended to make his victim whole in the end. The *Daniel* court rejected the defendant's argument that it should

> take the words 'harm' and 'deprive' in a grand sense.... But neither law nor policy supports this approach, which would have the jury look beyond [defendant's] bad conduct to his overall motives. It is sufficient that the defendant by material misrepresentations intends the victim to accept a substantial risk that otherwise would not have been taken.... The government had only to establish that Daniel intended to deprive [his victim] of money in the short term....

*Id.* at 488.

Accordingly, it matters not that Christopher did not intend to deprive the companies of value in the long run: his knowing deprivation of their legal title to such property in the short term clearly satisfies the specific intent requirement for a mail fraud conviction.

### B. Acceptance of Responsibility

 Christopher argues that the district court erroneously failed to grant him a reduction in his offense level pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility. The sentencing court's decision whether to grant a reduction for acceptance of responsibility is "entitled to great deference." U.S.S.G. § 3E1.1, comment (n.5). It is rare for a defendant to contest the charges at trial and nonetheless receive an acceptance of responsibility reduction at sentencing. Although the reduction may be available to a defendant who admits factual guilt but contests at trial only the constitutionality or applicability of the criminal statute. *United States v. Ma-*

*han,* 190 F.3d 416, 427 (6th Cir.1999), Christopher denied—and still denies—that he possessed the requisite intent to defraud the lessors. Contesting intent—an element of factual guilt for federal mail fraud—is sufficient grounds for denying Christopher a reduction for acceptance of responsibility. *Id.*

### C. Downward Departures

Christopher also argues that the district court erroneously failed to grant downward departures based on: actual losses overstating the seriousness of the crime (U.S.S.G. § 2F1.1. comment (n.11)); aberrant behavior (U.S.S.G. § 5K2.20);[1] victim behavior (U.S.S.G. § 5K2.10); and voluntary disclosure of the offense (U.S.S.G. § 5K2.16). Generally, a district court's denial of a discretionary downward departure is appealable only if the district court mistakenly believed that it did not have the authority to downwardly depart. *United States v. Henderson,* 209 F.3d 614, 617–18 (6th Cir.2000) (distinguishing *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), which "dealt with a district court's affirmative decision *to depart* downward [but] is inapplicable to a district court's decision *not* to depart from the sentencing guidelines." (emphasis in original)). Christopher does not argue, and presents no evidence, that the district court was unaware of its ability to depart downward. Accordingly, the district court's denial of the aforementioned departures is unreviewable.

### D. Attributable Loss

 Christopher challenges the loss attributed to his scheme for sentencing purposes. *See* U.S.S.G. § 2F1.1(b)(1).

---

1. U.S.S.G. § 5K2.20 was not in effect in the 1998 Guidelines under which Christopher was sentenced.

"[L]oss is the value of the money, property, or services unlawfully taken: it does not, for example, include interest the victim could have earned on such funds had the offense not occurred." U.S.S.G. § 2F1.1, comment (n.8). "[T]he loss need not be determined with precision. The court need only make a reasonable estimate of loss, given the available information." U.S.S.G § 2F1.1, comment (n.9).

The meaning of loss under U.S.S.G. § 2F1.1 is a question of law that we review de novo. *United States v. Lucas,* 99 F.3d 1290, 1293 (6th Cir.1996). Findings of fact as to the loss are reviewed for clear error. *United States v. Logan,* 250 F.3d 350, 370 (6th Cir.2001). While we previously reviewed the application of § 2F1.1 de novo. *United States v. Wolfe,* 71 F.3d 611, 616 (6th Cir.1995), the Supreme Court's decision in *Buford v. United States,* 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001). suggests giving due deference to such application by the district court. However, we need not determine which standard applies because the district court's determination of loss in this case fails under either standard of review because the errors in question are plain on the faces of the documents that formed the basis of the loss calculation. *See United States v. Solorio,* 337 F.3d 580, 600 (6th Cir.2003).

The sentencing guidelines provide that the fair market value of lost property may be used to calculate the loss. U.S.S.G. § 2F1.1, comment 8 (referencing the commentary to U.S.S.G § 2B1.1). Because in this case the primary loss to the companies was the loss of the equipment's residual value, the loss must be a reasonable estimate of the value of the equipment when the companies again had a right to possess it: that is, either when the lease terms ended (which may have been extended month-to-month) or when Christopher breached the leases by failing to pay the lessors.

We require that sentencing factors be supported by a preponderance of the evidence. *United States v. Mayle,* 334 F.3d 552, 556–57 (6th Cir.2003). Christopher cites *United States v. Mezas de Jesus,* 217 F.3d 638, 642 (9th Cir.2000). for the proposition that the government must prove actual loss by clear and convincing evidence. While some of our sister circuits require that sentencing enhancements that have an extremely disproportionate effect on the sentence be proved by clear and convincing evidence, we have rejected that position. *Mayle,* 334 F.3d at 557. Nor is it apparent that this case presents one of those exceptional situations that would invoke a higher evidentiary burden even in those circuits which sometimes require it. We also reject Christopher's argument that the district court "imposed no burden of proof whatsoever on the Government" at sentencing because Christopher makes no reference to any facts and does not state with any specificity what he believes the government failed to prove to the level of preponderance of the evidence.

Christopher also argues that the losses were merely "book losses." That is, he argues that the companies received a "windfall" gain on the value of the equipment due to the Y2K scare, and that, while he deprived the companies of the windfall, he did not deprive them of anything "real." Thus, he argues that using the fair market values inflated by Y2K is "patently unfair."

Christopher's argument is unavailing. Any gains or losses in the value of the equipment were for the owner to realize. The mere fact that gains in value were unexpected does not alter the fact that Christopher deprived the owners of this value. To the extent that unexpected actual losses may overstate or understate the seriousness of defendant's conduct, the

sentencing guidelines provide for an upward or downward departure. U.S.S.G. § 2F1.1, comment (n.8(b))

Christopher baldly asserts that utilizing losses that were not charged in the indictment "violates the Due Process and/or Equal Protection clauses." Appellant's Brief at 23. Christopher does not elaborate on this claim at all, and it is therefore waived. *See, e.g., United States v. Elder,* 90 F.3d 1110, 1118 (6th Cir.1996).

Finally, Christopher argues that the loss attributed to his fraud incorrectly incorporated losses "obtained in previously filed civil actions (which include losses which are not properly calculated in a sentencing analysis)," including lost lease revenue from after the expiration of the leases, as well as attorney fees and costs related to those cases. The district court attributed the following losses to Christopher's scheme: Leaf Financial Corp.(fka Fidelity Leasing: F.L.), $492.582.00; Meridian Leasing Corp., $111,129.50; Skylark Computer Sales, Inc., $137.000.00: Comdisco, Inc., $676,651.00: Donna Pizzaro, $18.200.00: Edgebrook Computer Services, Inc., $66,000.00; Mark Kroesch, $71,500.00. Christopher objected to all, or most, of these loss calculations in the Presentence Investigation Report.

It is clear that the documents from which some of the loss figures were derived include, on their face, amounts not permissibly included in the loss attributable to Christopher's fraud. As for the loss to Meridian, calculated at $111,129.50, this amount is the loss figure contained in an affidavit in Meridian's civil case against Pinnacle, setting out all civil damages caused by Pinnacle to Meridian in support of a default judgment. J.A. 912. Several of the amounts set forth in the affidavit, adopted by the district court, plainly may not be used to calculate the loss attributable to Christopher's fraud. Three of the

included amounts are for civil damages under separate, nonfraudulent transactions: 1) failure to make payments on an outright purchase of equipment that was unrelated to the fraudulent leases (Equipment Sales Agreement No. S96871): 2) freight charges relating to the late shipment of equipment purchased by Meridian from Pinnacle that was unrelated to the fraudulent leases (Equipment Purchase Agreement No. P87803): and 3) failure to pay property taxes under a lease unrelated to the fraudulent leases (Lease Supplement No. 3). J.A. 910–11. The total also incorrectly includes costs and attorney fees from the civil litigation. *See United States v. Seward,* 272 F.3d 831, 839 (7th Cir. 2001). The damages claimed in the Meridian affidavit for the three fraudulent leases also include late charges on rental payments and missed rental payments after the initial, prepaid lease term—both of which are purely contractual damages and apparently should not be included.

The district court likewise determined the loss to Leaf Financial (formerly known as Fidelity Leasing Corp. and F.L. Partnership Management, Inc.) from a settlement offer sent to Christopher from F.L. Partnership Management with a total demand of $492.582,00. J.A. 913–15. The face of the letter reveals that this total includes rent arrearage and interest on overdue rent which are not part of the loss caused by Christopher's fraud. The letter provides fair market values for the equipment as of May. Because Christopher breached the contracts for schedules 2 through 5 prior to May by failing to make rental payments, the guidelines permit the district court to include, in addition to these values, a reasonable estimate of the depreciation of the equipment from the time Christopher breached the contract until the May estimate. Because Leaf did not have a right to the equipment as of

May, it appears that the district court should also decrease the values given for schedules 6 and 7 by a reasonable estimate of the depreciation between May and the expiration of those prepaid leases. These adjustments may be minimal because the equipment was not rapidly depreciating: in any event, the estimate need only be reasonable.

The district court calculated the loss to Comdisco, Inc. at $676.651.00. According to the government, this amount was the principal sought in Comdisco's civil suit against Pinnacle. J.A. 902. Although this document was used for sentencing, it was not provided on appeal and thus we cannot determine whether this figure from the civil suit likewise includes damages in addition to the residual value of the equipment at the termination of the leases. In addition, since our record does not include a transcript of the sentencing hearing, we cannot evaluate the basis on which the district court concluded that the fraudulent loans from Tony Arora and Mark Kroesch constituted relevant conduct under U.S.S.G. § 2F1.1, comment (n.7).

The record on appeal likewise does not disclose the basis upon which the district court included the full value of the two loans of $50,000 made by Tony Arora to Christopher. Arora testified at trial that the reason he loaned the second $50.000 was that Christopher had been making timely payments on the first $50,000 loan (the first loan was made in February 1997 and the second loan was made in October 1997). J.A. 340–42. The first missed payment on the loans appears to have occurred on May 1, 1998. J.A. 855. Thus, Christopher made payments on the first loan from February 1997 through April 1998, and made payments on the second loan from October 1997 though April 1998.

In short, the record before us is not sufficiently clear as to the district's court calculation of the loss. Accordingly, we remand this case for a de novo resentencing of the defendant so that the district court can make clear, in conformity with applicable guidelines, its calculation of the attributable loss.

### III. CONCLUSION

For the reasons above, we **AFFIRM** Christopher's conviction but **VACATE** his sentence and **REMAND** to the district court for resentencing consistent with this opinion.