NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0352n.06

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | |
| | ) | *May 24, 2011* |
| v. | ) | |
| | ) | LEONARD GREEN, Clerk |
| COSTICA LUCIAN BONAS, aka Coco, aka Tico, | ) | |
| | ) | |
| Defendant-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DAVID ANDREW CARTER, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant, | ) | |
| | ) | |
| CORDELL SAIN, aka Myron Malone, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before:     **KEITH, McKEAGUE, and KETHLEDGE, Circuit Judges**.

**PER CURIAM**. Eleven defendants were indicted on various charges including conspiracy to possess, with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 841 and 846, possession of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in connection with drug trafficking, in violation of 18 U.S.C. § 924(c). A jury found Defendant-Appellant Costica Lucian Bonas guilty of conspiracy to possess, with the intent to distribute marijuana and possession of marijuana with the intent to distribute. Bonas appeals, urging that his conviction be vacated for the absence of a limiting jury instruction and

improper admission of a prejudicial photograph. He received concurrent sentences of imprisonment of ninety-seven months for both offenses. Bonas also contends on appeal that his sentences were unreasonable and he should have received a lesser sentence for his role in the offenses. Defendant-Appellant David Andrew Carter was acquitted of conspiracy to possess, with intent to distribute marijuana, but was found guilty of possession of a firearm in connection with drug trafficking, in violation of 18 U.S.C. § 924(c) and aiding and abetting the possession of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Carter was sentenced to consecutive terms of imprisonment of one hundred twenty months for the marijuana possession offense and sixty months for the firearm possession offense. Carter appeals, arguing that his guilty verdicts were against the great weight of the evidence and that his sentence was unreasonable, warranted safety valve relief, and should have been decreased based upon his role in the offenses. Defendant-Appellant Cordell Sain was found guilty of conspiracy to possess with the intent to distribute marijuana and possession of marijuana with the intent to distribute. Sain was sentenced to concurrent terms of 240 months' imprisonment for each offense. Sain appeals, stating that the district court erred at trial when it refused to categorically preclude the introduction of evidence of his post-indictment conviction for a drug offense and violated the Eighth Amendment's comparative proportionality principle when it sentenced him to a longer term of imprisonment than most other defendants. For the following reasons, we **AFFIRM** each Defendant-Appellant's convictions and sentences.

## I. BACKGROUND

### A. Investigation and Arrests

The Drug Enforcement Agency ("DEA") and Federal Bureau of Investigation ("FBI") were each conducting investigations involving drug trafficking in Michigan in 2007. On June 4, 2007, a DEA informant notified the agency that Costica Bonas was set to receive a 2,500 pound shipment of marijuana in Romulus, Michigan, shipped from Canada on June 5, 2007. Near the same time, a task force named CHIEF, comprised of FBI agents, DEA agents, and the Michigan State Police received information that a suspected drug trafficker, Ramon Soria, who had been arrested in 2007 in Texas with over 200 pounds of marijuana but fled while on bond, was staying at a Days Inn in Romulus, Michigan. The DEA and FBI, thereafter, coordinated surveillance.

On June 5, agents observed Soria meeting with three other individuals at the hotel. The four individuals then left the hotel in rental cars, with Soria and Herrera in one car, and the other two individuals in a second car. Agents followed the vehicles to a warehouse in Huron Township. The agents then set up surveillance of the warehouse. On the same day, several different vehicles with several different individuals, including Soria and Bonas, arrived at and departed from the warehouse. At about 11:14 a.m., multiple vehicles, including a black cargo truck and a white Toyota were present at the warehouse parked near each other. At about 12:05 p.m., a black cargo truck backed up to the warehouse door and then pulled away and left the warehouse. The white Toyota also left as the black cargo truck pulled away. Agents followed the white Toyota until it met a 53-foot long semi tractor-trailer ("semi") and led the semi back to the warehouse. The semi arrived at about 12:15 p.m. and backed into the warehouse doors. Agents and officers saw individuals bring tools at about

3

12:30 p.m. The semi departed the warehouse at about 12:40 p.m. without its trailer, which was left inside the warehouse. Agents overheard grinding and drilling noises. At about 1:55 p.m., the semi returned to the warehouse. The black cargo truck also returned. The semi picked up the trailer, and again departed. The black cargo truck backed into the warehouse at about 2:07 p.m. Agents and officers reportedly smelled marijuana and observed several men wearing gloves passing bales of marijuana from the warehouse into the black cargo truck as they entered the warehouse at about 2:10 p.m. Over 200 bales of marijuana, weighing about 2,312 pounds in total, were recovered from the warehouse, the black cargo truck, and from the semi's secret compartments when it was pulled over and searched after it left the warehouse. Defendants Bonas, Carter, Sain and eight others individuals were arrested as a result of the DEA and FBI raid and indicted on drug trafficking charges. At the time of his arrest, Carter had a loaded handgun tucked into his waistband. Carter had a valid concealed weapons permit for the gun.

### B. Jury Trials

Ten of the individuals indicted as co-conspirators in the drug ring pled guilty or were found guilty by a jury. The other individual was acquitted by a jury. Bonas and Carter were tried together by a jury, along with three other indicted co-conspirators. Sain requested, and obtained a separate jury trial.

#### 1. Bonas's and Carter's Joint Trial

The DEA informant did not testify at Bonas and Carter's joint trial. The DEA informant was referenced by the Government during its case and Bonas's counsel referenced the informant by name during his opening statement. Bonas did not testify during trial. Carter testified and contended that

4

he was not a part of the conspiracy and also was not guilty of the other charged offenses. In support of this contention, Carter testified that he was at the industrial location for an extremely short time, from approximately 2:07 p.m. to the time of the raid at 2:10 p.m., to pick up a shipment that his moving company was called to retrieve and that he had no knowledge of the drugs. Carter further testified that unlike his co-defendants, he was not wearing gloves at the time of the arrest, to suggest that he was not involved in the drug trafficking ring. The Government stated that the gloves were utilized to prevent fingerprints on the clear bales of marijuana. Carter sought to introduce photographs taken at the time of his arrest to corroborate his testimony. One agent testified that he did not see Carter wearing gloves, while two agents testified that they did see Carter wearing gloves, just like the gloves the others arrested at the scene were wearing. The Government asserted that Carter wore gloves, but that he had taken them off before he was handcuffed. The photograph at issue showed Carter without gloves, but also included co-defendant Bonas in handcuffs, wearing gloves. Bonas objected to the introduction of the photograph and asserted that it was more prejudicial than probative, which necessitated exclusion. The district court sustained the objection and excluded the photograph.

The next day, during direct examination, a federal agent, the Government sought to admit the same photograph containing Carter and Bonas while describing the scene at the time of the defendants' arrest. This time the district court admitted the photograph over Bonas's objection. The prosecutor contended that he was compelled to introduce the photo of Carter and Bonas since Carter raised the gloves issue and the prosecutor wanted to thwart other defendants from making the issue of gloves central to the case. Bonas strenuously contended that the photo was unnecessary.

At the close of the evidence, Bonas requested dismissal of all charges against him, and did so again after the trial judge instructed the jury. Neither motion to dismiss was granted. Carter did not seek a similar dismissal. The district court instructed the jury to decide the case based upon the evidence presented, including only what witnesses said under oath, and to refrain from speculation about what a witness might have said if they would have testified. Bonas did not request any specific jury instruction regarding the non-testifying DEA informant. The jury found that Bonas was responsible for possession with the intent to distribute more than 100 kilograms of marijuana.

*2. Sain's Individual Trial*

At his trial, Cordell Sain sought to exclude evidence of his subsequent convictions for possession with intent to distribute 14.8 grams of marijuana and being a felon in possession of a firearm. The district court ruled, in a written order, that the evidence was probative as to whether Sain had the intent to possess with intent to distribute marijuana or whether he was "merely present" at the time of the drug raid, but the district court made its ruling contingent on the defense that Sain produced. Sain did not object to the district court's ruling and did not testify at trial.

**C. Sentencing Hearings**

*1. Defendant Bonas*

Bonas received two concurrent sentences of ninety-seven months' imprisonment for conspiracy to possess, with the intent to distribute marijuana and possession with the intent to distribute marijuana, less than the statutory minimum of one hundred twenty months for each charge. The district court granted Bonas safety valve relief (over the Government's objection) pursuant to U.S.S.G. § 5C1.2. The district court denied Bonas's request for minor participant status, finding that

he helped procure the site, helped off-load the marijuana, and was not less than culpable than most of his co-conspirators. Bonas had no prior criminal convictions and was classified in Sentencing Guidelines Criminal History Category I.

*2. Defendant Carter*

Carter received a sentence of imprisonment totaling 180 months: consecutive sentences of 120 months' imprisonment for possession with intent to distribute, aiding and abetting and sixty months' imprisonment for possession of a firearm during a drug trafficking offense. At Carter's sentencing hearing, the district court found that he did not qualify for U.S.S.G. § 5C1.2 safety valve relief since two of the prerequisites were that the offense was committed absent possession of a firearm and that the defendant divulged all available information concerning the offense to the Government. The district court found that Carter had not truthfully provided all useful information to the Government and committed a crime while carrying a gun and, therefore, despite the district court's pronouncement of a "harsh sentence" of 180 months' imprisonment, Carter was subject to the applicable mandatory minimum sentences. The offenses mandated consecutive sentences. The district court also found that despite Carter's view that he should also be eligible for a sentence reduction as a minor participant, he was not a minor participant since he was an indispensable party to the crime—he supplied the black cargo truck into which more than one ton of marijuana was loaded.

*3. Defendant Sain*

Sain received concurrent sentences of 240 months' imprisonment (the mandatory minimum pursuant to sentencing enhancements) for each count of conspiracy to possess, with the intent to

distribute marijuana and possession with the intent to distribute marijuana. At sentencing, Sain was classified in Criminal History Category VI, and was found to be a career offender pursuant to the Sentencing Guidelines. This produced a Guidelines sentencing range of 360 months to life imprisonment. No other previously sentenced member of the drug ring received more than 180 months' imprisonment.

## II. ANALYSIS

We address each defendant's appeal in turn.

### A. Costica Bonas

Bonas contends that the district court erred at trial by failing to provide a limiting instruction regarding a non-testifying informant and abused its discretion by admitting a photograph showing him in handcuffs. Bonas asserts that these purported errors made his trial fundamentally unfair such that his conviction should be vacated. Bonas also argues that the court should have imposed a lesser sentence for his role in the offenses as a minor participant.

#### 1. Limiting Instruction

If the district court provided "confusing, misleading, and prejudicial" jury instructions, we must vacate Bonas's convictions. *United States v. Adams*, 583 F.3d 457, 469 (6th Cir. 2009) (citation omitted). However we are also mindful that "[t]he duty to provide an instruction . . . arises only 'upon [the] request' of one of the parties." *United States v. Fraser*, 448 F.3d 833, 839 n.3 (6th Cir. 2006) (citing Fed. R. Evid. 105) (additional citation omitted). Bonas failed to request a limiting jury instruction regarding the DEA informant so the trial court's procedure is viewed for plain error. *See Woodbridge v. Dahlberg*, 954 F.2d 1231, 1237 (6th Cir. 1992). To establish plain error, the

defendant must show that there is "(1) error, (2) that is plain, and (3) that affects substantial rights."

*Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (internal quotation marks and citation

omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice

a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation

of judicial proceedings." *Id.*

Bonas contends that the district court should have instructed the jury not to draw any

conclusions about what the DEA informant would have said if he were called to testify. Bonas

asserts that absent this specific instruction, he is entitled to a new trial. The Government contends

that Bonas, not it, repeatedly invoked the specter of the absent DEA informant. Indeed, Bonas's

counsel specifically threatened to call the DEA informant as a witness and attempted to question the

strength of the Government's case by remarking on the Government's decision not to have the

informant testify. Nevertheless, Bonas oddly contends that repeated references to the DEA

informant prejudiced his defense in the minds of the jurors. Bonas offers no support for the alleged

prejudice, but merely notes that after the jury verdict the Government stated to the district court that

Bonas made threats against the informant. We do not think that such a statement made to the court

*after* the jury verdict can be construed to show that the jury instructions caused prejudice to Bonas.

Furthermore, the district court charged the jury to only consider witness statements provided

under oath and to refrain from speculating about what a non-testifying witness might have said, since

that did not constitute evidence. No specific mention of the DEA informant was required or needed,

especially when one was not requested. Therefore, it is obvious upon review of the record that the

district court's pattern jury instructions regarding adherence to the evidence before the court and

preclusion from speculating about non-testifying witnesses constituted a sufficient jury instruction such that no error occurred.

### 2. Photograph Admission

Bonas states that the district court's decision to admit the photograph displaying him in handcuffs entitles him to a new trial. We review the admission of evidence for abuse of discretion. *See United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir. 1997). Relevant evidence is generally admissible, however, it may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . or needless presentation of cumulative evidence." Fed. R. Evid. 403. This court must "take into account that all evidence introduced by the prosecution generates prejudice against the defendant and ask specifically whether the item tends to suggest a decision on an improper basis." *United States v. Culbertson*, 364 F. App'x 998, 999 (6th Cir. 2010).

The district court engaged in the balancing test required by Federal Rule of Evidence 403 to determine whether or not the photograph showing Bonas in handcuffs should have been admitted. *See* Fed. R. Evid. 403. Bonas contends that the admission of the photograph depicting him in handcuffs was an abuse of discretion and that the photograph was prejudicial against his interests, duplicative, and unnecessary. He asserts that a better approach would have constituted a request by the trial court for stipulations from the other parties rather than admitting the photograph. This argument undercuts Bonas's assertion that the depiction of him in handcuffs affected the outcome of his case. While the photograph plainly showed him in a negative light since he was in handcuffs with gloves on, at most, the district court committed harmless error since it is highly improbable that

"the error materially affected the verdict." *Culbertson*, 364 F. App'x at 1000 (quoting *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008) (internal citation omitted)). Bonas, much less than his co-defendant Carter, had virtually zero merit in a potential mere presence defense given his entry and prolonged presence at the scene. The district court's admission of the photograph did not make the trial "fundamentally unfair," especially since there are no other errors to combine it with. *Id.* at 1001 (quoting *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004)). Accordingly, Bonas's conviction is **AFFIRMED**.

### 3. Role Reduction

Bonas states that his ninety-seven month concurrent sentences are unreasonable, based upon his belief that he should have been classified as a minor participant. Sentencing determinations are reviewed for reasonableness "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). Review for reasonableness mandates that the appellate court ensure that the sentence was both procedurally and substantively sound. *United States v. Sedore*, 512 F.3d 819, 822 (6th Cir. 2008). Sentences within the Guidelines range are afforded a rebuttable presumption of reasonableness. *United States v. Bailey*, 488 F.3d 363, 368 (6th Cir. 2007). Denial of a mitigating role reduction at sentencing is reviewed for clear error. *See United States v. Salas*, 455 F.3d 637, 644 (6th Cir. 2006).

> The Guidelines provide: "If the defendant was a minimal participant in any criminal activity, decrease by 4 levels; if the defendant was a minor participant in any criminal activity, decrease by 2 levels; and, in cases falling between minimal and minor, decrease by 3 levels." U.S.S.G. § 3B1.2. A "minimal participant" is one "who plays a minimal role in concerted activity." *Id.* cmt. n.4. A "minor participant" is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* cmt. n.5.

*United States v. Olea-Coronado*, 391 F. App'x 508, 510 (6th Cir. 2010) (quotation marks and brackets omitted).

Bonas contends that the district court should have categorized him as a minor or minimal participant in the drug conspiracy and given him a corresponding sentence reduction pursuant to U.S.S.G. § 3B1.2.  Bonas seeks to distinguish his conduct from that of the "mastermind," co-defendant Soria.  Bonas recites the requirement that a participant lacking knowledge or understanding of the scope and structure of a drug enterprise is entitled to categorization as a minor or minimal participant.  *See* U.S.S.G. § 3B1.2.  In support of his argument he states that he only "assisted" in the drug ring by unloading and reloading bales of marijuana and did not direct his co-defendants/co-conspirators.

Bonas's Guidelines range of imprisonment was ninety-seven to one hundred twenty-one months for each count. The district court applied safety valve relief pursuant to U.S.S.G. § 5C1.2 to depart below the statutory minimum of one hundred twenty months for each count, and sentenced Bonas to concurrent ninety-seven month sentences.  While Bonas may not have been the mastermind of the drug conspiracy, he provides little detail as to how his criminal conduct compared to that of his co-defendants.  It is not enough to say that he was simply not the director and was merely an "assistant."  Further, the jury specifically found that Bonas was responsible for possession with the intent to distribute more than 100 kilograms of marijuana.  Bonas's ninety-seven month sentence was reasonable and there was no clear error in the district court's denial of his request for a minimal role reduction.  Thus, Bonas's conviction and sentences are **AFFIRMED**.

**B. David Carter**

Carter's appeal is predicated upon his belief that his convictions for aiding and abetting the possession of marijuana with the intent to distribute and possession of a firearm in connection with drug trafficking were against the great weight of the evidence. Carter also asserts that the sentences he received were unreasonable. Carter contends that the district court failed to address the 18 U.S.C. § 3553(a) factors, that the court erred in not granting him a reduction below the mandatory minimum pursuant to the Sentencing Guidelines safety valve provision, and that the court erred by refusing to grant him a sentence reduction as a minimal or minor participant or to depart below the Sentencing Guidelines based on aberrant behavior.

*1. Sufficiency of the Evidence*

We review de novo Carter's claim that there was insufficient evidence to sustain his possession of marijuana with intent to distribute and possession of a firearm in connection with drug trafficking offenses. *United States v. Carson*, 560 F.3d 566, 579 (6th Cir. 2009). Carter bears a "heavy burden when making a sufficiency of the evidence challenge" since we must view "all evidence in the light most favorable to the prosecution and determine[] whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *Id.* at 580 (quoting *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999)). Regarding the possession of marijuana with the intent to distribute offense, "[t]o establish a violation of § 841(a)(1), the government must prove the following elements: '(1) knowing (2) possession of a controlled substance (3) with intent to distribute.'" *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001) (quoting *United States v. Christian*, 786 F.2d 203, 210 (6th Cir. 1986)). To show a violation of 18 U.S.C. § 2, Carter must

13

have possessed "knowledge of the general scope and nature of the illegal [activity] and awareness of the general facts concerning the venture." *United States v. Sliwo*, 620 F.3d 630, 638 (6th Cir. 2010) (alteration in original) (citation omitted). "Mere presence at the scene of the crime" is insufficient to establish aiding and abetting; rather, to establish Carter's guilt here, the Government must have shown he "was a participant rather than merely a knowing spectator." *United States v. Pena*, 983 F.2d 71, 73 (6th Cir. 1993) (quoting *United States v. Bryant*, 461 F.2d 912, 921 (6th Cir. 1972); *see also United States v. Morrison*, 220 F. App'x 389, 398 (6th Cir. 2007) (finding defendant's mere knowledge of "*some* illegal activity" insufficient to support aiding and abetting conviction (emphasis in original)).

"Circumstantial evidence alone can be sufficient to sustain a conviction." *Mackey*, 265 F.3d at 460. Thus, the Government could substantiate the charged offense by showing that not only did Carter know about the packages of marijuana (evidenced by his arrest at the back of the truck with dozens of marijuana bales extremely close to him), but also that he specifically drove a truck to assist in transporting the marijuana. As to the weapons possession offense, to establish a violation of 18 U.S.C. § 924(c), the government must show that during a drug trafficking crime, Carter carried a firearm. *Id.* Carter has admitted to having the weapon in his waistband at the time of his arrest and during his trip to the warehouse; thus, if there is sufficient evidence to substantiate his aiding and abetting possession with intent to distribute marijuana offense, the firearm conviction must stand.

In *Pena*, we reversed a defendant's conviction for aiding and abetting possession with intent to distribute cocaine. 983 F.2d at 71. The defendant was a sleeping passenger in a borrowed car which was stopped by police officers for a speeding violation. Police officers performed a consent

14

search of the car and discovered fifteen packages amounting to seventeen kilograms of cocaine. The defendant denied knowing what was in the car but stated that she "felt there was probably something illegal going on." *Id.* at 72. Finding that prosecutors adduced no additional information to support that the defendant knew more about the nature of the illegality and instead relied upon "[g]uilt by association," we reversed the defendant's conviction. *Id.* at 73.

Here, the jury was presented with sufficient, circumstantial evidence to support Carter's conviction, markedly different from *Pena. See also Sliwo*, 620 F.3d at 635 (vacating conviction for aiding and abetting possession with intent to distribute marijuana where the defendant served only as a lookout and procured an empty van). Carter was twice-present at the scene, before and during the drug raid. Driving with another member of the conspiracy, he backed his truck up and the co-defendants loaded bales of marijuana into it. Carter was arrested in the back of the cargo van where bales of marijuana were present. The jury weighed Carter's own testimony that he was simply an innocent individual picking up a shipment for his moving company with the testimony of multiple federal agents, which indicated that a huge drug shipment had been planned and was being executed, that the marijuana was packed in clear bales and exuded a pungent aroma, and that Carter wore gloves just like his co-defendants at the time of his arrest. One agent did testify that he did not see Carter wearing gloves. Carter contends that because the raid occurred at the same time he went to the back of the cargo van, he had insufficient time to leave the scene. Here, a reasonable juror could find that an innocent person would not stay in the back of the cargo van—even if only for a few minutes—while it was clearly being loaded with marijuana. Such a finding is a particularly reasonable inference when the same individual possessed a handgun and was wearing gloves like

15

the other defendants. Furthermore, it would be quite reasonable for a juror to conclude that it would be highly unlikely for drug dealers to hire a legitimate moving company to move millions of dollars of marijuana that had a pungent odor and was wrapped in clear plastic. Upon review of the record, we find that a rational trier of fact could have found the essential elements of the crimes — aiding and abetting possession with intent to distribute marijuana and possession of a firearm during that criminal offense — proven beyond a reasonable doubt. Accordingly, Carter's convictions are **AFFIRMED**.

*2. Sentence Reasonableness*

Carter was sentenced to consecutive terms of imprisonment of one hundred twenty months for aiding and abetting possession with the intent to distribute marijuana and sixty months for possession of a firearm during that drug trafficking offense. Carter asserts that the district court failed to review the § 3553(a) sentencing factors or make an individualized assessment of him based upon all the facts presented.

a. 18 U.S.C. § 3553(a) Factors

A district court need not explicitly refer to the § 3553(a) factors at sentencing, but the court's sentence must be explained and allow for meaningful appellate review. *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999); *see Gall*, 552 U.S. at 50. Here, the district court explicitly stated that the applicable mandatory minimums applied and Carter's sentence was guided by statute, not the Sentencing Guidelines. *United States v. Franklin*, 499 F.3d 578, 585 (6th Cir. 2007) (stating that "§ 3553(a) factors do not apply to congressionally mandated sentences"). It appears that Carter

16

merely disagrees with the district court's sentence. However, the sentence was reasonable and the district court's failure to mechanically state the § 3553(a) factors was inconsequential.

### b. Downward Sentencing Departures

Carter asserts that his sentence was unreasonable since he was not granted U.S.S.G. § 5C1.2 safety valve relief, U.S.S.G. § 3B1.2 role reduction, or U.S.S.G. § 5K2.20 aberrant behavior downward departures, each of which he contends were applicable and would have reduced his sentence. Section 5C1.2 safety valve relief mandates that the district court find that a defendant was truthful, provided all useful information to the Government *and* did not commit the instant offense while possessing a gun. U.S.S.G. § 5C1.2(a)(2), (a)(5) (emphasis added). Given the jury's conviction of Carter for the aiding and abetting possession with the intent to distribute offense, it was not clear error for the court to find that Carter was less than truthful in providing all information to the Government, since he claimed he had none. Further, since Carter was found guilty of possession of a firearm while drug trafficking, he plainly did not qualify for safety valve relief. Notwithstanding Carter's belief that he should have qualified for a reduction based upon a minimal or minor role, the district also did not err as to its denial since Carter's truck provided the means of loading over *one ton* of marijuana. *See generally Salas*, 455 F.3d at 644 (applying clear error standard and affirming a district court's denial of minor role sentence adjustment where the defendant played "indispensable role" in drug operation).

Section 5K2.20 permits a district court to pronounce a sentence below the applicable Guidelines range in extraordinary cases where a defendant's criminal offense constituted aberrant behavior. U.S.S.G. § 5K2.20(a). Denial of a discretionary downward departure is appealable "only

if the district court mistakenly believed that it did not have the authority to downwardly depart." *United States v. Christopher*, 91 F. App'x 471, 474 (6th Cir. 2004). "'Aberrant behavior' means a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." *United States v. Carson*, 560 F.3d 566, 589 (6th Cir. 2009) (quoting U.S.S.G. § 5K2.20 cmt. n.1 (2001)). Unfortunately for Carter, § 5K2.20 does not apply to serious drug offenses. U.S.S.G. § 5K2.20(c)(3) and cmt. n.1. Therefore, Carter's sentences are **AFFIRMED**.

## C. Cordell Sain

Sain appeals, contending that the district court erred by failing to exclude evidence of his post-indictment conviction for possession with intent to distribute 14.8 grams of marijuana and status as a felon in possession of a firearm, where the court made its evidentiary ruling contingent on whether or not Sain raised a "mere presence defense." Sain also asserts that the Eighth Amendment's requirement of comparative proportionality in sentencing precludes the two hundred forty month sentence of imprisonment that he received since other, purportedly more culpable co-conspirators received much lesser prison sentences, including the supposed mastermind, Costica Bonas, who received ninety-seven months' imprisonment.

### 1. Contingent Evidentiary Ruling

An evidentiary ruling pursuant to Fed. R. Evid. 404(b) is reviewed for an abuse of discretion. *United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010).

> Prior to admitting Rule 404(b) evidence, the district court must: (1) make a preliminary finding as to whether sufficient evidence exists that the prior act occurred; (2) determine whether the other act is admissible for one of the proper purposes outlined in Rule 404(b); and (3) apply Rule 403 balancing to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice or other concerns embodied in Rule 403.

*Id.* (citation omitted).

Where a district court erroneously admits evidence of "other acts," the judgment must be reversed unless the court "can say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *United States v. Haywood*, 280 F.3d 715,724 (6th Cir. 2002) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)) (internal quotation marks omitted).

The Government contends that the district court did not enter a definitive ruling on admissibility since the district court's order stated that Sain's post-indictment conviction for drug possession might be admissible, pursuant to Fed. R. Evid. 404(b), if Sain utilized a "mere presence defense" at which time the district court would then consider the admissibility of the conviction. R. 217 at 22-25. Rule 404(b) provides that "[e]vidence of other crimes [. . .] is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Even if, as Sain argues, it would have been error for the district court to admit such evidence, that error was never actually committed. The district court never categorically stated that the post-indictment conviction would be admitted, nor did the district court allow introduction of Sain's post-indictment conviction

19

during trial. Therefore, the issue is not properly before this court since the district court did not issue a definite ruling on the introduction of the evidence. Accordingly, Sain's appeal of the evidentiary issue is **DISMISSED**.

*2. Sentence Reasonableness and Proportionality*

Sain further asserts that his sentence amounts to an Eighth Amendment violation for cruel and unusual punishment based upon a gross lack of proportionality to his co-defendants. "A constitutional challenge to a sentence is a question of law and reviewed de novo." *United States v. Jones*, 569 F.3d 569, 573 (6th Cir. 2009) (quotation marks and additional citation omitted).

The Eighth Amendment's prohibition on the infliction of "cruel and unusual punishment" also forbids an extreme sentence which is "'grossly disproportionate to the crime' at issue." *United States v. Sutton*, 406 F. App'x 955, 959 (6th Cir. 2011) (quoting *United States v. Flowal*, 163 F.3d 956, 963 (6th Cir. 1998)). Sain contends that the sentences he received in comparison to his co-conspirators are grossly disproportionate, such that his constitutional rights were violated. Since Sain's sentence is reasonable it certainly does not violate the Eighth Amendment. Simply put, as detailed by the Presentence Investigation Report, Defendant Sain earned his status as a career offender through the fifteen years of mayhem he committed, including multiple assaults with and without weapons, and domestic abuse. Some co-defendants pled guilty and received lesser sentences. Sain exercised his right to trial with the pre-trial knowledge that the Government filed a sentence enhancement. *See* 21 U.S.C. § 851 (mandating 20 year sentence of imprisonment where defendant convicted given prior felony drug conviction). No other co-conspirator was a career offender. Sain's career offender status resulted in his automatic Sentencing Guidelines

categorization in Criminal History Category VI, yet the district court *still* reduced Sain's sentence to the statutorily mandated minimum of 240 months, below the Guidelines range of 360 months' to life imprisonment. Further, Sain's 240 month sentence was also ordered run concurrent with his 168 month sentence for drug trafficking. *See generally United States v. Watford*, 468 F.3d 891, 915-16 (6th Cir. 2006) (discussing district court's authority to run sentences "concurrently, partially concurrently, or consecutively . . . to achieve a reasonable punishment"). Sain received the 168 month sentence while he was on bond in the instant action. Upon review of the circumstances, we find the district court's sentence for his instant offenses reasonable. Sain's conviction and sentence should be **AFFIRMED**.

### III. CONCLUSION

Accordingly, for the foregoing reasons, the conviction and sentence of Defendant Bonas are **AFFIRMED**. Defendant Carter's conviction and sentence are **AFFIRMED**. Defendant Sain's appeal is **DISMISSED-in-part** as moot as to the trial evidentiary issue of the admissibility of a post-indictment conviction since no final ruling was entered by the district court. Thus, Defendant Sain's conviction and sentence are **AFFIRMED**.