**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0825n.06

**No. 08-6297**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | **Dec 12, 2011** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Western |
| CURTIS DODSON, | ) | District of Tennessee |
| | ) | |
| Defendant-Appellant. | ) | |

Before:      BOGGS and STRANCH, Circuit Judges; and THAPAR,[*] District Judge

BOGGS, Circuit Judge.  A federal jury convicted Curtis Dodson of conspiracy to possess at least five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, and aiding and abetting in the possession of more than 500 grams of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Dodson appeals, claiming first that the government did not produce enough evidence to convict him of either charge, and second that the district court erred by admitting law-enforcement officers' opinion testimony on drug dealers' behavior, without giving a contemporaneous dual-role instruction.  For the reasons that follow, we affirm the judgment of conviction.

---

[*] Hon. Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I

Lucio Sandoval and Francisco Abernathy ran a large drug-dealing operation. Sandoval arranged to send drugs, initially by UPS and later through private couriers, from California to a "stash-house" that Abernathy owned in Memphis, Tennessee. Sandoval would then fly to Memphis, help Abernathy process and sell the drugs, and receive payment.

Dodson met Abernathy through motorcycle racing, and met Sandoval through Abernathy. Initially, Dodson did not participate in any illegal activity. Eventually, however, he began to help Sandoval with drug-related tasks, including unloading drugs from the trucks Sandoval arranged, delivering drugs to local clients, and unwrapping, weighing, and re-packaging drugs, including the cocaine found in this case.

On March 13, 2006, a state officer, Jason Randolph, discovered approximately five kilograms of cocaine during a traffic stop. The driver was arrested and cooperated with police. He explained that he was a hired courier and led officers to Abernathy's stash-house, where he had acquired the drugs.

The police did not enter immediately. Instead, a number of Tennessee officers, accompanied by two federal agents, returned later in the evening. Officer Randolph and colleague John Birch attempted a 'knock and talk,' a noncustodial procedure "where a police officer knocks on the front door of a home for purposes of speaking to the occupants or asking for consent to search the premises," *Pritchard v. Hamilton Twp. Bd. of Trustees*, 424 F. App'x 492, 499 (6th Cir. 2011), while the other law-enforcement personnel waited outside. As the officers approached the house,

they encountered Abernathy, who was leaving, and they saw through an open door that several people were gathered in the living room. They escorted Abernathy back inside. There, Officer Randolph patted him down, removing a gun, two cell-phones, and a set of car keys from his person. The officers then ordered all the people in the house to gather in one room. Once all the occupants were in one place, the officers asked who owned the house. No one answered. Officer Randolph remained in the living room, while Officer Birch proceeded to the back of the house. There, he found Dodson and Sandoval in a small bedroom. Both men denied knowing who owned the house. Birch escorted both to the living room.[1]

Birch next called for the officers who had been waiting outside. Because no one admitted to owning the house, the officers decided it was not possible to conduct a search based on consent. They therefore duly obtained a warrant and began to search the house. In the bedroom where, according to Sandoval, Dodson stayed, one of the federal agents found a stack of mail in Dodson's name. Officers also found a shotgun that Sandoval claimed belonged to Dodson, and drug-dealing equipment, including digital scales and a vacuum-sealer system.

Officer Dave McGriff, a supervisor, spoke with Dodson twice over the course of the evening. During the first conversation, Dodson told McGriff that he did not live at the stash-house or know whose house it was. Later in the evening, Dodson asked McGriff for his car keys—the same keys Randolph had taken from Abernathy earlier. Along with keys to Dodson's car, the key-ring held a key to the stash-house. Still, Dodson denied knowing who owned the house, claiming that Abernathy must have put the key on the ring.

---

[1] Dodson does not challenge the propriety of the officers' search of the stash-house.

The investigation continued after March 13, with Sandoval's cooperation. Sandoval used the directory feature in his cell phone to identify phone numbers belonging to Abernathy and Dodson. Drug Enforcement Agency Agent Abe Collins obtained phone records for the numbers Sandoval identified and performed a "link-analysis," which indicates how frequently one cell-phone user contacts another based on cell-phone records. Agent Collins's analysis showed that Dodson contacted Sandoval fourteen times, and Abernathy 122 times, during the period from January 1, 2006 through March 13, 2006.

At trial, both Officer Randolph and Agent Collins testified. On cross-examination, Dodson's counsel asked Randolph whether, based on his training and experience, it was common for drug dealers to register cars in others' names. Randolph answered that it was. On re-direct-examination, Randolph testified that drug dealers followed the same practice with cell phones and firearms. Agent Collins testified about the nature and purposes of stash-houses, drug dealers' use of weapons and other equipment, and the street value of cocaine.

The court did not identify either law-enforcement officer as an expert. After the prosecution asked a series of foundational questions, however, the court did state, in front of the jury, that Collins could give opinion testimony on "narcotics dealers." At no point did defense counsel object to either Officer Randolph or Agent Collins's opinion testimony. In its jury charge, the trial court gave an instruction on opinion evidence, providing:

> You have heard the testimony of Jason Randolph, Raul Morales[2] and Abe Collins who rendered opinions in this case. A witness who is allowed to render an opinion has special knowledge or experience that allows him to give an opinion. You do not

---

[2] Morales is a forensic chemist, employed by the DEA.

have to accept the opinion of such a witness. In deciding how much weight to give it, you should consider the witness' qualifications and how he reached his conclusions. Remember that you alone decide how much of a witness' testimony to believe and how much weight it deserves.[3]

The jury convicted Dodson of conspiracy to possess at least five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, and aiding and abetting in the possession of in excess of 500 grams of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. R. 271.[4] Dodson appealed, claiming: (1) the evidence was insufficient to support conviction on either count; and (2) admission of police testimony on drug dealers' behavior without a jury instruction on officers' dual role as lay witnesses and experts was so prejudicial that it constituted plain error.

II

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "A defendant making such a challenge bears a very heavy burden." *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000). "[T]he relevant question is whether, after viewing the evidence in the light most favorable

---

[3] This instruction is nearly identical to Sixth Circuit Criminal Pattern Jury Instruction 7.03. The only differences were that the court: (1) added: "A witness who is allowed to render an opinion has special knowledge or experience that allows him to give an opinion," and (2) omitted: "Also consider the other factors discussed in these instructions for weighing the credibility of witnesses." Sixth Circuit Criminal Pattern Jury Instructions, 7.03 (2009).

[4] The district court's entry of judgment form states that Dodson was convicted on both counts of the indictment, but incorrectly labels the first count as aiding and abetting, rather than conspiracy.

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Although this court's review is *de novo*, *United States v. Carson*, 560 F.3d 566, 579 (6th Cir. 2009), "[w]e draw all available inferences and resolve all issues of credibility in favor of the jury's verdict, and it is not necessary for us to exclude every reasonable hypothesis but guilt." *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997).

A

"To sustain a conviction for drug conspiracy under [21 U.S.C.] section 846 the government must prove beyond a reasonable doubt: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). "Once a conspiracy has been proven, only slight evidence is necessary to implicate a defendant as a participant in that conspiracy if the evidence shows the connection beyond a reasonable doubt." *Tocco*, 200 F.3d at 424.

The record below amply supports the jury's verdict. According to Sandoval, Dodson helped unload, deliver, weigh, and package drugs. Indeed, Dodson worked with Sandoval to unpack and re-pack the very cocaine found in this case. Other evidence in the record also supports the jury's verdict. The DEA's investigation showed that Dodson was in frequent phone contact with both Abernathy and Sandoval; officers searching the stash-house found Dodson's mail along with a shotgun that Sandoval claimed belonged to Dodson; and Dodson kept a key to the stash-house with his car keys—which were found in Abernathy's pocket. Finally, Dodson lied about his living situation. There was mail addressed to him at the stash-house and he had a key to the house on his

key-ring. Nevertheless, he denied living there and claimed he did not know who owned the property. "[I]t is today universally conceded that the fact of an accused's . . . concealment . . . and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *United States v. Griffin*, 172 F.3d 874, 1999 WL 71602, at *5 (6th Cir. 1999) (table) (quoting *United States v. Serio*, 440 F.2d 827, 832 (6th Cir. 1971)) (internal quotation marks omitted).

We hold that, in light of Sandoval's testimony, physical evidence from the stash-house, and Dodson's evasive demeanor about his living situation, a reasonable jury could have inferred beyond a reasonable doubt that Dodson knowingly or intentionally agreed to possess, and participated in possessing, at least five kilograms of cocaine.

Dodson's contrary arguments—that Sandoval's testimony does not establish that he knowingly agreed to participate in the conspiracy, and that Abernathy's testimony exonerates him—are unavailing.[5] "When deciding whether any rational trier of fact could have found the essential elements of the crime, this court does not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." *Gardner*, 488 F.3d at 710 (internal citations omitted). To accept Dodson's arguments would be to flout this principle. Although Abernathy flatly denied that Dodson had any role in the drug enterprise, Sandoval expressly stated that Dodson was an active participant. Which of these witnesses to credit and how much weight to ascribe to their testimony is the province of the jury.

---

[5] Dodson also suggests that evidence of the drug transaction between him and Sandoval is insufficient to support his conviction. He appears to ignore the rest of the evidence presented against him in making this claim.

Dodson, therefore, has failed to meet his "very heavy burden," *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000), of demonstrating that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

B

"[T]o establish a violation of [21 U.S.C.] § 841(a)(1), the government must prove the following elements: (1) knowing (2) possession of a controlled substance (3) with intent to distribute." *United States v. Bonas*, 434 F. App'x 422, 430 (6th Cir. 2011) (quoting *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001)) (internal quotation marks omitted).

Dodson claims that no evidence exists that he knowingly possessed a controlled substance, either directly or constructively. He was charged, however, under an aiding-and-abetting theory. To prove aiding and abetting, the government need only show that Dodson knew that Abernathy and Sandoval possessed cocaine with the intent to distribute it and that he assisted in their plan to deliver it. *See United States v. Ledezma*, 26 F.3d 636, 641 (6th Cir. 1994). Sandoval testified that Dodson worked with him to unload, deliver, weigh, and package drugs. Further, there was mail addressed to Dodson at the stash-house, where drugs were often in plain view, and he had a key to the house on his key ring. This evidence easily supports a rational inference that Dodson knew Abernathy and Sandoval possessed cocaine, with the intent to distribute it, and assisted in their plan to deliver it. *Jackson*, 443 U.S. at 319.

III

Dodson's final argument is that admission of Officer Randolph and Agent Collins's testimony on drug dealers' habitual behavior, without a contemporaneous dual-role instruction, requires reversal of his conviction. Plain-error analysis applies to this claim because Dodson did not object to admission of the officers' testimony at trial. *See United States v. Martin*, 520 F.3d 656, 658 (6th Cir. 2008). Under plain-error analysis, this court overturns a conviction only if: "(1) there was error that (2) was plain, (3) affected a substantial right, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Ibid.* (internal quotation omitted).

Because the court did not err in this case, we need not proceed beyond the first step of plain-error analysis. A trial judge's instructions on opinion witnesses are designed to "ameliorate the risk of jury confusion regarding dual role testimony." *United States v. Lopez-Medina*, 461 F.3d 724, 744 (6th Cir. 2006). At the same time, however, trial courts are not to call attention to a witness's expert status, since such a designation risks giving the witness's opinion the court's imprimatur. *See United States v. Johnson*, 488 F.3d 690, 697–98 (6th Cir. 2007). Only if a defendant objects to opinion testimony should the trial court allow voir dire and then decide whether the witness may offer an opinion. *Id.* at 698.

The district court in this case did not identify either law-enforcement officer as an expert, although it did allow Collins to give opinion testimony, after the prosecution asked a series of foundational questions. In its jury charge, the court gave an instruction substantially identical to Sixth Circuit Criminal Pattern Jury Instruction 7.03, explaining how the jury should weigh opinion testimony. *See supra* note 3.

The court's approach was not error. By declining to draw special attention to the witnesses' status as law-enforcement officers, then giving this circuit's pattern instruction on opinion testimony when charging the jury at the end of the case, the court appropriately balanced the need to "ameliorate the risk of jury confusion regarding dual role testimony," *Lopez-Medina*, 461 F.3d at 744, with the danger of "'putting some general seal of approval on an expert after he has been qualified but before any questions have been posed to him.'" Sixth Circuit Criminal Pattern Jury Instruction 7.03, Committee Commentary (2009) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

Dodson's contrary argument rests primarily on analogy to *Lopez-Medina*, where this court found that admission of law-enforcement personnel's testimony as both fact and expert witnesses, without a dual-purpose instruction and without any clear demarcation between fact and expert testimony, was plain error. *Lopez-Medina*, 461 F.3d at 742–45. This court, however, has "declined to extend the holding in *Lopez-Medina* to circumstances in which there were no other evidentiary errors." *United States v. Vasquez*, 560 F.3d 461, 470–71 (6th Cir. 2009) (citing *Martin*, 520 F.3d at 659–60). Dodson makes no other evidentiary claims. Thus, *Lopez-Medina* does not control. Furthermore, the trial court's jury instruction—while not contemporaneous—was nearly identical to the instructions the *Lopez-Medina* court suggested would be sufficient. *Compare* R. 355 at 768–69 (jury instructions, as recorded in trial transcript), *with Lopez-Medina*, 461 F.3d at 743. The only material difference was that, instead of using the term 'expert witness,' the trial court used

the term 'witness.'[6] Thus, unlike the court in *Lopez-Medina*, the court here "guard[ed] against the risk of confusion inherent when a law enforcement agent testifies as both a fact witness and as an expert witness." *Lopez-Medina*, 461 F.3d at 744.

We hold, therefore, that the trial court did not commit error, much less plain error, by admitting law-enforcement officers' opinion testimony in evidence, then giving an instruction substantially identical to Sixth Circuit Criminal Pattern Jury Instruction 7.03 in its jury-charge.

IV

The government presented evidence sufficient to convict Dodson on both counts of the indictment, and the district court did not commit plain error in admitting the officers' opinion testimony without a contemporaneous dual-role instruction. We therefore AFFIRM Dodson's conviction.

---

[6] This court's decision in *Johnson*, 488 F.3d at 697–98, required such an alteration.