UNITED STATES of America, Plaintiff/Respondent,

v.

Lazelle MAXWELL, Defendant/Movant.

Criminal Action No. 2:09–33–DCR.
Civil Action No. 2:12–7223–DCR.

United States District Court,
E.D. Kentucky,
Northern Division,
at Covington.

June 4, 2013.

Lazelle Maxwell, Glenville, WV, pro se.

**MEMORANDUM OPINION
AND ORDER**

DANNY C. REEVES, District Judge.

This matter is pending for consideration of Defendant/Movant Lazelle Maxwell's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 244] Consistent with local practice, the motion was referred to United States Magistrate Judge Robert E. Wier for consideration under 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Wier filed a Recommended Disposition on April 3, 2013. [Record No. 264] Based on his review of the record and the applicable law, Magistrate Judge Wier recommended that Maxwell's motion be denied. However, he also recommended that the Court grant a Certificate of Appealability regarding the second claim raised in Maxwell's § 2255 motion. The United States filed an objection to the magistrate judge's recommendation on April 17, 2013, and Maxwell filed his objections on April 30, 2013. [Record Nos. 265, 268] Having reviewed all matters relevant to Maxwell's motion, the Court concludes that the Recommended Disposition should be adopted in full. Therefore, Maxwell's motion will be denied.

**I.**

Maxwell was charged on April 9, 2009 with two counts of conspiracy to distribute and possess with intent to distribute a controlled substance—namely, cocaine base (crack cocaine) and heroin—in Kenton and Campbell Counties in Kentucky. [Record No. 1] Attorney David Fessler was appointed to represent Maxwell on May 29, 2013. [Record No. 46] On June 11, 2009, the grand jury returned a Superseding Indictment, which amended the second count to specify that the conspiracy involved 100 grams or more of heroin and added two counts of forfeiture to the conspiracy charges contained in the original Indictment. [Record No. 65]

Following a six-day trial, on September 23, 2009, a jury found Defendant Maxwell guilty of conspiracy to distribute over 50

grams of cocaine base (crack cocaine) and conspiracy to distribute over 100 grams of heroin in violation of 21 U.S.C. § 846. Maxwell was later sentenced to a combined term of imprisonment of 360 months for these crimes, followed by ten years of supervised release. [Record No. 208] Specifically, Maxwell received 240 months' imprisonment for Count One and 120 months' imprisonment on Count Two, to be served consecutively. [Id., p. 2] The total sentence imposed was at the bottom of the United States Sentencing Guidelines range of 360 months to life.[1] [Record No. 226, p. 15] Maxwell appealed his conviction and sentence, but the United States Court of Appeals for the Sixth Circuit affirmed the Judgment on March 18, 2011, 415 Fed. Appx. 692 (6th Cir.2011). [Record No. 233] The Supreme Court denied Maxwell's petition for a writ of certiorari on June 20, 2011, —— U.S. ——, 131 S.Ct. 3048, 180 L.Ed.2d 864 (2011). [Record No. 236]

Maxwell filed his motion to vacate under 28 U.S.C. § 2255 on June 18, 2012. [Record No. 244] The United States responded to the motion on August 21, 2012, and Maxwell filed a reply on October 16, 2012. [Record Nos. 251, 255] On January 4, 2013, Magistrate Judge Wier ordered the United States to file a supplemental brief stating its position on: "(1) The effect, if any, of *Rutledge* on the prejudice argument previously made by the Government; and (2) The merits of Maxwell's argument concerning the separate conspiracy counts." [Record No. 259, p. 3] The United States filed this brief on January 15, 2013 and Maxwell replied on February 7, 2013. [Record Nos. 260, 261]

## II.

The Court reviews *de novo* those portions of the Recommended Disposition to which Maxwell objects. *See* 28 U.S.C. § 636(b)(1)(C). In his § 2255 motion, Maxwell claims that his trial counsel provided ineffective assistance by failing to: (1) challenge the Superseding Indictment's open-ended beginning date for the conspiracy; (2) challenge the Superseding Indictment's charging structure; and (3) object to the testimony of two law enforcement officers.[2] [Record No. 244] Although Magistrate Judge Wier rejected all of these claims in his Recommended Disposition, Maxwell filed detailed objections to each of those conclusions. Therefore, the Court will review all three of Maxwell's claims.

Claims of ineffective assistance of counsel are evaluated using the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, the defendant must first establish "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. When evaluating an ineffectiveness claim, the Court "must indulge a strong presumption" that counsel rendered effective assistance. *Id.* at 689, 104 S.Ct. 2052. The second prong of the *Strickland* inquiry is whether the defendant was prejudiced by his attorney's deficient performance. *Id.* at 687, 104 S.Ct. 2052. To satisfy the prejudice requirement, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

---

1. Although Maxwell qualified as a career offender, the total offense level for the grouped counts resulted in a higher total offense level under the Guidelines. [Record No. 226, p. 15]

2. Maxwell's § 2255 motion also alleges that his appellate counsel was constitutionally ineffective; however, he expressly withdrew these claims on October 16, 2012. [Record No. 255, p. 2; *see* Record No. 268, p. 2]

of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. If either part of the *Strickland* test is not met, the Court's inquiry ends.[3] *Id.* at 697, 104 S.Ct. 2052. Here, the Magistrate Judge correctly determined that Maxwell's ineffective-assistance claims fail under *Strickland.*

## A. Temporal Parameters

■ Counts One and Two of the Superseding Indictment state that the conspiracy occurred "[o]n a date unknown and continuing through on or about May 21, 2008." [Record No. 65] In his § 2255 motion, Maxwell claims that his trial counsel erred by not objecting "to the conspiracy counts' failure to charge a beginning date for the conspiracy." [Record No. 244, p. 10] He alleges that this failure constituted ineffective assistance of counsel because, in the absence of a defined start date, he was unable to prepare a proper defense to the charges, offer an alibi defense, or allege double jeopardy.

Magistrate Judge Wier found that Maxwell's trial counsel did not err in deciding to forgo challenging the temporal parameters of the Superseding Indictment. He noted that there is a factual disagreement between Maxwell and his counsel on this issue: "Counsel Fessler avers that the defense fully discussed the theory and opted against a baseless attack. Maxwell avers that Fessler promised to make a defensive motion and failed to do so against his wishes." [Record No. 264, p. 5] However, the magistrate judge ultimately determined that this dispute was not dispositive because the Superseding Indictment was "invulnerable to attack in this scenario." [*Id.*] Maxwell objects to this conclusion,

arguing that he was denied a fair trial as a result of the Superseding Indictment's failure to allege a defined start date for the conspiracy. [Record No. 268, pp. 6–12]

■ An indictment is sufficient if it "'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Anderson,* 605 F.3d 404, 411 (6th Cir.2010) (quoting *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). An indictment that fails to place the offense within any defined time frame does not meet these requirements; however, the start date need not be as specifically defined as the end date. Thus, "[c]ourts have found indictments insufficient where they are open-ended as to both beginning and end dates, but sufficient where they fix the end of the conspiracy and provide an approximate start date." *United States v. Vassar,* 346 Fed.Appx. 17, 19–20 (6th Cir.2009) (finding indictment sufficient where conspiracy was alleged to take place "on or before January 1, 2004, until on or about August 24, 2005") (internal citation omitted). Thus, "an indictment that is open-ended as to beginning dates but not end dates suffices." *Id.* at 22.

■ * In short, the failure to identify a specific start date in the indictment does not render it constitutionally deficient. Indeed, other circuits have upheld indictments using the same or similar language as that employed in the Superseding Indictment in this case. *United States v. Forrester,* 616 F.3d 929, 940–41 (9th Cir. 2010) (upholding indictment that alleged an offense beginning on a "date unknown"

---

**3.** The Supreme Court has instructed that "there is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

because "an indictment that specifies an end date is sufficient to apprise defendants of the charges and enable them to prepare a defense"); *United States v. Rawlins*, 606 F.3d 73, 79 (3d Cir.2010) (finding indictment sufficient where it alleged a conspiracy beginning at "a time unknown"); *United States v. Pease*, 240 F.3d 938, 943 (11th Cir.2001) (concluding that indictment charging a conspiracy beginning on an "unknown date" was sufficient to inform the defendant of the charges against him). Maxwell argues that in each of these cases, "there were ways to determine a time frame from the indictment, such as overt acts being charged in the same indictment." [Record No. 268, p. 9] It is true that in *Forrester*, the Ninth Circuit stated "uncertainty regarding a conspiracy's beginning and ending dates does not render an indictment fatally defective so long as overt acts alleged in the indictment adequately limit the time frame of the conspiracy." 616 F.3d at 941. However, the court went on to explain that an indictment that "tracks the language of the conspiracy statute, identifies a location and co-conspirators, and alleges the purpose of the conspiracy" is sufficient despite its "semi-discrete time period." [4] *Id.* Here, as in *Forrester*, the Superseding Indictment's description of the conspiracy adequately limited the time frame at issue.

The conspiracy charges contained in the Superseding Indictment were not deficient despite the open-ended start date. Moreover, as the magistrate judge points out, the United States committed itself to a start date of on or around January 2008 in its bill of particulars and proposed statement of the case. [Record No. 264, p. 6; *see* Record Nos. 43, 109] Therefore, Maxwell's assertion that the Superseding Indictment's failure to allege a specific start date prevented him from preparing his defense or "offering a reliable alibi defense" is unavailing.[5] [Record No. 268, p. 6] This conclusion is supported by Fessler's affidavit, in which he states that he called "several witnesses to talk about the Defendant's whereabouts on particular dates and particular spans of dates." [Record No. 251–1 ¶ 11] A review of the trial transcripts confirms this assertion. [Record No. 219, pp. 71–82 (questioning Chris Shields about Maxwell's whereabouts from December 2007 through May 2008); *id.*, pp. 102–06 (questioning William Johnson regarding same time period); *id.*, pp. 113–16 (questioning Betty Maxwell regarding same time period); *id.*, pp. 123–27 (questioning William James Maxwell, Jr. regarding same time period); *id.*, pp. 135–47 (questioning Teresia Diane Maxwell regarding same time period)] The Court thus rejects Maxwell's claim that he received ineffective assistance of counsel because Fessler did not object to the temporal parameters of the Superseding Indictment.

**B. Charging Structure**

█ Maxwell also claims that his trial attorney erred by failing to object to the Superseding Indictment's "charging of two conspiracies for the same conduct in Counts One and Two." [Record No. 244, p. 13] He argues that the indictment was multiplicitous—*i.e.*, it improperly charged "the same offense in more than one count

---

4. The indictment in *Rawlins* was more specific, detailing "at least fifteen overt acts taken in furtherance of [the] conspiracy, and the approximate date of each." 606 F.3d at 79. Such specificity provides strong support for the sufficiency of the indictment; however, a court may find an indictment sufficient even if it lacks similarly detailed allegations.

5. For the same reasons, the Court finds unpersuasive Maxwell's argument that his trial was "fundamentally unfair" because the United States had "an unlimited time period[ ] in which to prove the aggravated drug amounts." [Record No. 268, p. 12]

of a single indictment," Black's Law Dictionary (9th ed. 2009)—and thus violated double jeopardy principles. The United States counters that "existing case law in effect at the time of the trial supported the bringing of separate indictments for conspiracy to traffic in crack cocaine and conspiracy to traffic in heroin." [6] [Record No. 260, p. 1] Although Magistrate Judge Wier opined that this issue is a "close call," he ultimately concluded that Maxwell has failed to demonstrate that Fessler's decision not to object to the indictment constitutes a violation under *Strickland.* [Record No. 264, p. 8]

As explained above, Counts One and Two of the Superseding Indictment charge conspiracy to distribute certain controlled substances, in violation of 21 U.S.C. § 846. This statute provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. The two counts allege identical dates, participants, and locations. They only differ with respect to the drug involved in the conspiracy. As a result, Maxwell asserts that the Superseding Indictment alleges a single offense that should have been "charged as one count." [Record No. 268, p. 13]

▮ The magistrate judge first considered the merits of Maxwell's claims under *Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), which

considered an indictment that contained multiple counts charging violations of the same conspiracy statute—the predecessor to 18 U.S.C. § 371. In *Braverman,* the Supreme Court rejected the separation of charges based on the various objects of the conspiracy, explaining as follows:

> Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

317 U.S. at 53, 63 S.Ct. 99. Thus, under *Braverman,* it is improper to charge multiple violations of the same conspiracy statute where there is only one alleged agreement. *See id.* at 54, 63 S.Ct. 99 ("The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute.").

The Sixth Circuit has repeatedly relied on *Braverman* in rejecting duplicity arguments against charges arising under conspiracy statutes, including 21 U.S.C. § 846.[7] In *United States v. Campbell,* 279 F.3d 392 (6th Cir.2002), the court held that an indictment charging conspiracy to distribute marijuana, cocaine, and crack cocaine in a single count was not duplicitous, explaining that " '[a] single conspiracy may have as its objective the distribution of two different drugs without rendering it duplicitous.' " *Id.* at 398

---

6. The United States also maintains that Maxwell waived this claim because he failed to raise the issue on direct appeal. However, this argument ignores the fact that Maxwell has couched his allegations in the context of a claim for ineffective assistance of trial counsel under *Strickland.* It is well-established that a defendant's "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under

§ 2255." *Massaro v. United States,* 538 U.S. 500, 509, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). The government's argument is, therefore, incorrect.

7. Duplicity, as opposed to multiplicity—the basis for the claim asserted by Maxwell in this § 2255 motion—occurs when "joining two or more offenses in the same count of an indictment." Black's Law Dictionary (9th ed. 2009).

(quoting *United States v. Dale*, 178 F.3d 429 (6th Cir.1999)) (emphasis omitted). Based on this authority, Magistrate Judge Wier logically concluded that "[i]f charging a single § 846 conspiracy to commit multiple controlled substances act crimes is proper ... then splitting that one conspiracy into multiple charges would spread a singular crime over plural counts, thus violating *Braverman*." [Record No. 264, p. 11] Assuming that this case involved a single conspiracy to distribute two different controlled substances—and there is very little evidence in the record from which to conclude otherwise [*see* Record No. 264, pp. 12–13 (cataloguing United States' descriptions of offense as single conspiracy)]—the Superseding Indictment would appear to be multiplicitous.

However, the Sixth Circuit also rejected a similar multiplicity claim in *United States v. Dunn*, 269 Fed.Appx. 567 (6th Cir.2008). In *Dunn*, the defendant was charged with two counts of conspiracy: one count for conspiracy to distribute more than 50 grams of cocaine base, and another count for conspiracy to distribute more than 5 kilograms of powder cocaine. *Id.* at 573. The court concluded that this charging structure did not implicate double jeopardy concerns because "[c]harging a defendant with separate counts for different statutory criminal offenses does not violate the multiplicity rule." *Id.* Although he noted the inconsistency between *Dunn* and *Braverman*, Magistrate Judge Wier found that Fessler "may reasonably have viewed *Dunn* as answering the question as to a conspiracy under § 846 involving multiple controlled substances as trafficking

objects."[8] [Record No. 264, p. 16] Therefore, the magistrate judge found that there was no Sixth Amendment violation despite Fessler's failure to object to the structure of the Superseding Indictment.

Maxwell objects to the magistrate judge's conclusion. He repeats many of the same arguments from his § 2255 motion regarding double jeopardy. However, he also asserts that "at no time[ ] did Fessler state that his research led him to discover *United States v. Dunn*." [Record No. 268, p. 14] Additionally, he points out that it is just as likely that Fessler would have found a case that supported the decision to challenge the Superseding Indictment's charging structure as it was that he would have come across *Dunn* first. [*Id.* (citing *Montgomery v. United States*, 871 F.2d 1088, at *1 (6th Cir.1989) (table)] Thus, he maintains that Fessler's performance was deficient. Further, he asserts that he was prejudiced by the error under *Rutledge v. United States*, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), because he "has the stigma of two aggravated felony drug convictions when there should be only one." [*Id.*, p. 15]

Due to the nature of Maxwell's § 2255 claims, this issue must be analyzed under the framework established by *Strickland*, not as a separate due process or double jeopardy violation. And the "Sixth Amendment does not require perfect performance but permits a 'wide range of professionally competent assistance,' especially regarding strategic choices made by 'reasonable investigation.'" *Peters v. Chandler*, 292 Fed.Appx. 453, 459 (6th Cir.2008) (quoting *Strickland*,

---

**8.** Moreover, the magistrate judge found that because Maxwell could be convicted as a career offender under the Guidelines, it was not unreasonable for Fessler to view the "separate charges as functionally irrelevant to a bottom-line concern of time in custody." [Record No. 264, p. 17] He concluded that

*Dunn* could be read to support such an opinion. Indeed, the *Dunn* court opined that the error alleged in that case would not have affected the defendant's substantive rights because the "merger of the first and second [counts]" had no "practical effect" on the sentence. 269 Fed.Appx. at 574.

466 U.S. at 690–91, 104 S.Ct. 2052). Here, Fessler has stated that he reviewed the Superseding Indictment, conducted research, and "found no law supporting any Objections and/or Motions to Dismiss the Indictment." [Record No. 251–1 ¶ 9] The Court finds no error in Fessler's decision not to challenge the structure of the Superseding Indictment where there was a rational basis for that course of conduct. At the time of Maxwell's trial, there was Sixth Circuit authority which indicated that the charging structure at issue would pass constitutional muster. Therefore, Fessler's performance was not objectively deficient.[9]

## C. Dual–Role Witnesses

█ Finally, Maxwell asserts that he received ineffective assistance of counsel with respect to the testimony of government witnesses Matthew Rolfsen of the Northern Kentucky Drug Strike Force and Bill Birkenhauer of the Campbell County Police Department. He maintains that his attorney failed to object to these witnesses testimony "concerning their opinion on seized evidence without being qualified as expert witnesses" and that Fessler erred when he did not request a curative instruction to prevent jury confusion. [Record No. 244, p. 14] The United States counters that proper procedure was followed at trial and that the "record amply demonstrates the qualifications of the two witnesses as to the opinion evidence

they offered and justifies the admission of those opinions." [Record No. 251, p. 10] Additionally, it contends that the jury instruction was adequate to cure any jury confusion created by the "limited opinion evidence" given by Rolfsen and Birkenhauer.[10] [Id.]

After reviewing the testimony of both witnesses, Magistrate Judge Wier rejected this claim. The magistrate judge found that both witnesses were qualified to testify as experts on the issues raised at trial. Thus, he concluded that Fessler's decision not to object was a strategic choice that is entitled to deference under *Strickland.* Additionally, Magistrate Judge Wier averred that the jury instructions contained "adequate dual-role protections." [Record No. 264, p. 23] Objecting to these findings, Maxwell argues that "Fessler's failure to object allowed both Rolfsen and Birkenhauer to give both lay and expert testimony without being accepted as expert witnesses," thus allowing them to "enhance their lay testimony." [Record No. 268, p. 23] As a result, he maintains that this testimony violated his due process rights and "rendered the entire proceeding unfair." [Id., p. 24]

The Court concludes that Maxwell's trial attorney did not provide inadequate assistance of counsel by refraining from seeking to qualify these witnesses as experts or objecting to their testimony at trial. Maxwell argues that Rolfsen and Birkenhauer should have been qualified as experts so

---

9. Because Maxwell's claim fails on the deficiency prong of *Strickland*, the Court need not address his arguments regarding prejudice. However, the Court notes that Counts One and Two were grouped at sentencing, and this "grouping inure[d] to the benefit of the defendant." [Record No. 226, p. 11] Thus, the Guidelines range would have been the same whether Maxwell was sentenced for one count only, two grouped counts, or as a career offender. [Id., pp. 14–15; *see* Record No. 264, p. 18 n. 13]

10. Both witnesses primarily testified as fact witnesses regarding their investigations into the offenses at issue in this matter. [Record No. 217, pp. 9–39 (Rolfsen); *id.*, pp. 39–77 (Birkenhauer)] In addition, Rolfsen gave opinion testimony regarding "drug ledgers," the use of baggies for packaging drugs, the economics of drug trafficking, the use of disposable phones in drug trafficking, and "cutting agents." [*Id.*, pp. 14–15, 19–20, 25, 29–32] Birkenhauer testified about the purpose and use of line-ups and identification procedures. [*Id.*, pp. 85–869, 106–07]

that his counsel "would have had an opportunity to voir dire them." [Record No. 244, p. 14] However, such a procedure was not necessary and may, in fact, have resulted in the jury placing more emphasis on their testimony than would have occurred otherwise. "When a court certifies that a witness is an expert, it lends a note of approval to the witness that inordinately enhances the witness's stature and detracts from the court's neutrality and detachment." *United States v. Johnson*, 488 F.3d 690, 697 (6th Cir.2007) (disapproving practice of court certification of expert witnesses unless considering an objection). As the magistrate judge pointed out, both witnesses were highly qualified and had previously testified as experts in both state and federal cases. Moreover, Fessler "plainly had experience with both witnesses." [Record No. 264, p. 20 (citing Record No. 217, pp. 35, 37, 88)] Thus, his decision not to object may have been a "strategy to avoid elevating [the witnesses'] testimony to expert status before the jury," especially since their testimony was mostly factual in nature. *United States v. Cobbs*, 233 Fed.Appx. 524, 541 (6th Cir.2007). In short, Fessler's decision not to object to the expert qualifications of Rolfsen or Birkenhauer was a matter of legitimate trial strategy.

■ Maxwell also argues that Fessler provided inadequate assistance of counsel by failing to ensure the proper safeguards against jury confusion. Maxwell cites *United States v. Lopez–Medina*, 461 F.3d 724 (6th Cir.2006), in support of this position. However, *Lopez–Medina* does not compel the result urged by Maxwell. In that case, the Sixth Circuit found that it was error for the trial court to allow an agent to testify in a dual capacity where "no instruction on expert witness testimo-

ny was given, let alone an instruction on the agents' dual role as fact and expert witnesses." *Id.* at 744. However, the court specifically stated that "[i]n past cases we have permitted an officer's dual testimony as a fact and expert witness when an adequate cautionary jury instruction was provided." *Id.* at 743. And a jury instruction on the weight to be given to opinion testimony is sufficient to safeguard against jury confusion. *Id.* at 743–44; *United States v. Thomas*, 74 F.3d 676, 683 (6th Cir.1996) (finding no error where trial court allowed dual testimony but gave jury instruction on expert opinion evidence).

The Court finds *United States v. Dodson*, 450 Fed.Appx. 505 (6th Cir.2011), controlling here. In *Dodson*, the district court allowed a law enforcement officer to testify as both a fact and expert witness, but gave a jury instruction on opinion testimony that was "substantially identical" to Sixth Circuit Criminal Pattern Jury Instruction 7.03. *Id.* at 511. The Sixth Circuit found no error, holding that the district court had sufficiently guarded "'against the risk of confusion inherent when a law enforcement agent testifies as both a fact witness and as an expert witness.'" *Id.* (quoting *Lopez–Medina*, 461 F.3d at 744). Here, as in *Dodson*, the Court gave a jury instruction that tracked the language of Sixth Circuit Criminal Pattern Jury Instruction 7.03 regarding opinion testimony. [Record No. 143, p. 28] Therefore, Maxwell received adequate protections from any potential jury confusion caused by the testimony of Rolfsen and Birkenhauer. Fessler's performance was not deficient and, even if he had erred, his decision not to seek any additional cautionary instructions did not prejudice Maxwell at trial.[11]

11. *Lopez–Medina* does not apply "to circumstances in which there were no other evidentiary errors." *United States v. Vasquez*, 560

F.3d 461, 470–71 (6th Cir.2009). Maxwell has not alleged any additional evidentiary er-

## III.

A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the requisite "substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2), "a petitioner who has been denied relief in a district court 'must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.'" *Lozada v. Deeds*, 498 U.S. 430, 432, 111 S.Ct. 860, 112 L.Ed.2d 956 (1991) (emphasis and brackets in original) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). Maxwell has not made a substantial showing of a denial of a constitutional right with respect to his first and third claims. Likewise, he has not demonstrated that the issues he now seeks to raise are debatable among jurists of reason or that the questions are adequate to deserve encouragement to proceed further.

 However, the magistrate judge recommended that the Court certify an appeal on Maxwell's second claim. He averred that this claim, "alleging multiplicity and a *Strickland* failure, is fairly debatable." [Record No. 264, p. 24] Thus, he concluded that there is adequate merit to support the issuance of a Certificate of Appealability. The United States objects to this recommendation. It contends that

if the Court were to re-sentence Maxwell, it "would likely result in the same total sentence." [*Id.*] Although this may be true, it ignores certain consequences of the prior sentence, such as separate special assessments, potential stigma, and collateral consequences. The United States also argues that *Dunn* provided guidance to trial counsel by "affirming separate convictions for multiple conspiracy counts involving a single conspiracy distributing different controlled substances."[12] [Record No. 265, p. 2] However, for the reasons explained above, an attorney who conducted more thorough research into the issue would have reason to doubt the holding in *Dunn.*

The Court will issue a Certificate of Appealability with respect to Maxwell's second claim, concerning the charging structure of the Superseding Indictment. Although this Court has concluded that Fessler did provided competent assistance, another court might view the issue differently, determining instead that Fessler "should have delved deeply enough to uncover a meritorious argument." [Record No. 264, p. 24] In other words, a reasonable jurist could debate the question of Fessler's performance. Maxwell has made a "substantial showing" that his Sixth Amendment right to adequate assistance of counsel was violated when his trial counsel opted not to challenge the Superseding Indictment as multiplicitous.

---

rors in his § 2255 motion. Even if there was error with respect to Rolfsen's and Birkenhauer's dual-role testimony, Maxwell would have to show that it had an "actual effect on the outcome of the case." *Lopez–Medina,* 461 F.3d at 745. In light of the substantial amount of evidence supporting Maxwell's conviction, Maxwell is unable to make such a showing. *See United States v. Shields,* 415 Fed.Appx. 692, 703–04 (6th Cir.2011) (describing evidence against Maxwell).

**12.** The United States acknowledges the inconsistencies between *Dunn* and *Braverman,* but argues that there are "factual distinctions between the cases which may justify" the differing results. [Record No. 265, p. 3] However, the United States fails to identify those distinctions or explain why they would control the disparate outcomes.

## IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The Recommended Disposition of Magistrate Judge Robert E. Wier [Record No. 264] is **ADOPTED** and **INCORPORATED** by reference.

2. Defendant/Movant Lazelle Maxwell's motion to vacate, set aside, or correct his sentence [Record No. 244] is **DENIED.**

3. Maxwell's objections to the Recommended Disposition [Record No. 268] are **OVERRULED.**

4. The United States' objections to the Recommended Disposition [Record No. 265] are **OVERRULED.**

5. This habeas proceeding is **DISMISSED** and **STRICKEN** from the docket.

6. A Certificate of Appealability shall issue regarding Maxwell's second claim. The issue that is certified is "whether Maxwell's trial counsel erred under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), by failing to challenge the charges against Maxwell in Counts One and Two of the Superseding Indictment as multiplicitous."

---

1. This filing date reflects the prison mailbox rule. *See Richard v. Ray,* 290 F.3d 810, 812–13 (6th Cir.2002) (per curiam). Here, Maxwell affirmed under penalty of perjury that he executed and mailed the Motion on June 12, 2012. DE # 244 (Motion) at 6.

2. *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose,* 765 F.2d 82, 84–85 (6th Cir.1985) (noting that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

## RECOMMENDED DISPOSITION

ROBERT E. WIER, United States Magistrate Judge.

The Court considers the June 12, 2012,[1] *pro se*[2] 28 U.S.C. § 2255 motion of Lazelle Maxwell. Maxwell is serving a 360 month sentence in federal prison under a January 2010 judgment in the District. DE # 208 (Judgment). Judge Reeves sentenced Maxwell after a jury convicted him of conspiring to traffic in aggravated amounts of cocaine base and heroin. DE ## 146 (Redacted Jury Verdict) (guilty finding as to 50+ grams of crack cocaine and 100+ grams of heroin); 208 (Judgment). Each substance carried a mandatory minimum premised on quantity. Movant also was a career offender under the Guidelines. DE # 211 (Presentence Investigation Report). The sentence is at the bottom of Maxwell's 360–life range and results from consecutively imposed mandatory minimum terms on the crack cocaine and heroin counts. *See* DE # 208 (Judgment).

Maxwell appealed, challenging a pretrial suppression ruling, evidence sufficiency, and the sentence, but the Sixth Circuit affirmed. DE # 233 (Order). A certiorari effort failed, DE ## 235, 236, and Maxwell then filed a timely § 2255 motion. DE # 244 (Motion). The United States responded, DE # 251, and Movant replied. DE # 255.[3]

Movant's § 2255 effort presents only *Strickland* claims targeting the performance of appointed counsel, Hon. David Fessler.[4] Maxwell claims counsel was con-

---

3. The briefing reflects procedural decisions on attorney-client privilege waiver, *see* DE # 250 (Order), and record expansion. *See* DE # 254 (Order). Maxwell's *Strickland* claim results in partial waiver. The Court also assured Maxwell's access to portions of the transcript relevant to his habeas arguments. *See id.*

4. Originally, Maxwell also included claims critical of appellate counsel. *See* DE # 244 (Motion) at 8 (enumeration of three claims regarding Fessler and two against appellate attorney Timothy McKenna). Movant contended that McKenna should have appealed

stitutionally ineffective by (1) failing to challenge the open-ended temporal nature of the conspiracy charges; (2) failing to challenge the separate counts under a single conspiracy; and (3) failing to object to expert testimony offered by two law enforcement officers and to secure "dual role" procedural protections before the jury.

For the reasons explained in this recommendation, the District Court should **DENY** Maxwell's § 2255 motion (DE # 244). Counsel recognized that he had no meritorious basis for attacking the temporal particulars of the Superseding Indictment and properly elected against such a move. Though counsel's failure to attack the Indictment's charging structure is debatable, *Strickland* does not warrant relief because Sixth Circuit precedent exists that would validate the structure. Further, as to the witnesses, Maxwell received appropriate protections from the Court, and Fessler made strategic decisions about trial management that are unassailable under *Strickland.* Counsel simply was not ineffective, and Movant is not entitled to relief. The District Court also should **deny** a Certificate of Appealability, except as to the second claim.

## I. Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States,* 334 F.3d 491, 496–97 (6th Cir.2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States,* 268 F.3d 346, 351 (6th Cir.2001))). A defendant alleging a constitutional violation must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States,* 165 F.3d 486, 488 (6th Cir.1999). When alleging a non-constitutional error, a defendant must prove the error constituted a " 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson,* 918 F.2d 627, 630 (6th Cir.1990) (quoting *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)); *see also Watson,* 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving his or her factual assertions by a preponderance of the evidence. *McQueen v. United States,* 58 Fed. Appx. 73, 76 (6th Cir.2003) (per curiam) ("Defendants seeking to set aside their

---

the amounts of crack and heroin utilized at sentencing and should have ordered complete trial transcripts (to include all arguments and the jury charge). *After the United States re-*sponded, Maxwell expressly withdrew his contentions as to McKenna's performance. *See* DE # 255 (Reply) at 2 *("Petitioner is abandoning both issues concerning ineffective assistance of appellate counsel.").* Movant's concession, premised on his career offender status and the absence of any substantive arguments from untranscribed portions of the trial, eliminates those issues from consideration here. The Court does note, however, that Maxwell had access to all trial testimony, to the jury instructions, and to the Government's closing argument. He did not appeal a pre-reply order that refused transcription of the other portions. *See* DE # 254.

sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S.Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064–65. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069.

## II. Analysis

### A. The Superseding Indictment's temporal parameters were appropriate. Thus, it was not ineffective assistance for counsel to forgo challenging that aspect of the indictment.

The Superseding Indictment charged Maxwell with conspiring to distribute and possess with intent to distribute crack and heroin in Northern Kentucky "[o]n a date unknown and continuing through on or about May 21, 2008[.]" DE # 65 (Superseding Indictment) (counts 1 and 2). Movant vociferously argues that the open-ended nature of the charges rendered the Superseding Indictment invalid, prevented him from defending against the charges, and would prejudice his ability to assert double jeopardy against an overlapping conspiracy claim. *See* DE # 244 (Motion) at 11; # 255 (Reply) at 6–12. The United States contends it identified more precise dates in pre-trial filings and denies any basis for relief. DE # 251 (Response) at 8–9.

There is factual disagreement here over whether Maxwell and counsel elected against raising the temporal issue via a motion to dismiss. Counsel Fessler avers that the defense fully discussed the theory and opted against a baseless attack. Maxwell avers that Fessler promised to make a defensive motion and failed to do so against his wishes. *See* DE # 255–1 (Maxwell Affidavit) at ¶ 3. This factual conflict, which in some cases might call for a hearing, is irrelevant here because the Indictment was invulnerable to attack in this scenario.

An indictment is "sufficient 'if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United*

*States v. Vassar,* 346 Fed.Appx. 17, 19–20 (6th Cir.2009) (quotation omitted). The Sixth Circuit acknowledges the importance of temporal information but endorses the view that one fixed reference point suffices. Thus, "Courts have found indictments insufficient where they are open-ended as to both beginning and end dates ... but sufficient where they fix the end of the conspiracy and provide an approximate start date." *Id.* (citing cases). *Vassar* went on to state, expressly, "And as we explained, *an indictment that is open-ended as to beginning dates but not end dates suffices.*" *Id.* (emphasis added) (citing *United States v. Hultgren,* 713 F.2d 79, 89 (5th Cir.1983)). This comports with views of the other circuits. *See, e.g., United States v. Forrester,* 616 F.3d 929, 940–41 (9th Cir.2010) ("[A]n indictment that specifies an end date is sufficient to apprise defendants of the charges and enable them to prepare a defense[.]"); *United States v. Rawlins,* 606 F.3d 73, 79 (3d Cir.2010) (citing harmonious cases and joining *Forrester* to affirm indictment "open-ended only as to the beginning date"). Thus, Fessler's statement to Maxwell post-trial was an accurate one—"The law does allow for indefinite periods of time in certain instances." DE # 255–2 (Fessler letter to Maxwell dated 10/26/09) at 3.

Further, and particular to this case, the Government committed pre-trial to a precise beginning point for the conspiracy at issue. In briefing on a co-defendant's motion for bill of particulars, the United States discussed known conspiracy participants, including Maxwell, and declared: "[T]he United States would offer the time frame from on or about January 2008 through May 21, 2008 for the existence of the conspiracy." DE # 43 (Response to Motion for Bill of Particulars) at 2. Later, in the tendered statement of the case, the United States described the conspiracy as running "from on or about January 2008 through May 21, 2008." DE # 109 (Unit-

ed States Statement of Case) at 1; DE # 110 (Defendant Statement of Case) at 1 (defense acknowledging United States depiction of case). Attorney Fessler agreed that the open-ended nature of the charges, as to conspiracy commencement, did not alter or affect defense preparation. *See* DE # 251–1 (Fessler Affidavit), ¶ 11. Indeed, Fessler and Maxwell knew of the January 2008 start date and offered alibi witnesses, *see id.,* the very step Maxwell suggests a better defined date would have allowed. At sentencing, Maxwell attempted to interject the date issue. Although Judge Reeves rejected the relevance of an Indictment critique at the sentencing stage, he did comment on awareness of the actual date parameters: "[T]hrough discovery and otherwise, the defendant was certainly made aware of the time period that was alleged." DE # 226 (Sent. Tr.) at 9.

Plainly, then, the Indictment was not insufficient under recognized law, and Fessler violated no professional norms by forgoing a motion challenging charge language. In any event, the defense had the date particulars (and thus the preparation notice and conduct delimiters) that a more precise Indictment would have provided. Maxwell suffered no prejudice from the open-ended nature. Even if Fessler should have raised the date issue, Maxwell is unable to demonstrate harm. For these reasons, the argument fails entirely.

*B. Counsel's failure to challenge the Superseding Indictment's charging structure does not, in this context, entitle Maxwell to relief under Strickland.*

Maxwell criticizes Fessler for failing to challenge the Superseding Indictment as multiplicitous. Particularly, he contends that the Indictment violated double jeopardy principles by charging **separate** conspiracy counts under what actually was

one alleged drug trafficking conspiracy. He argues, based on *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942), that the Government cannot separately charge and punish an integrated trafficking conspiracy that involves as distribution objects multiple controlled substances within but one criminal agreement. *See* DE # 244 (Motion) at 11–14; # 255 (Reply) at 17 (discussing theory). Here, count 1 involved conspiracy to traffic an aggravated crack quantity, and count 2 involved conspiracy to traffic an aggravated heroin quantity. *See* DE # 65 (Superseding Indictment). The counts alleged identical conspiracy dates, participants, and locations. Ultimately, as noted, after conviction on each count, Judge Reeves sentenced Maxwell to 360 months total (a combination of the mandatory minimum on each count, run consecutively), which equaled the bottom of the Guidelines range of 360 months-life. *See* DE # 208 (Judgment) (listing consecutive terms); DE # 226 (Sent. Tr.) at 26 (imposing sentence).

This is a close call, on the law and the facts, one too close for the Government's casual analysis. First, the United States ignored the merits altogether and simply argued that, whether convicted on one or two counts, nothing in the sentence "would have changed" because Maxwell was a career offender and would have faced the same Guidelines range irrespective of count numerosity. *See* DE # 251 (Response) at 9. The Court required further briefing because, as Maxwell pointed out in reply, even an overlapping concurrent sentence (which carries a separate special assessment and its own potential stigma and collateral consequences) is a distinct punishment for double jeopardy purposes under *Rutledge v. United States*, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). Thus, the facile no prejudice gambit was, at least, incomplete. In its supplemental brief, the Government advances procedural default [5] but does finally address the merits, citing to some authority supportive of the charging model here used. *See* DE # 260 (Supplemental Brief) at 2–3.

*Braverman's* principle against splitting a single conspiracy into separate crimes based on conspiracy objects raises a significant question for this indictment and conviction. In *Braverman*, the prosecution (using the predecessor general conspiracy statute to 18 U.S.C. § 371) conceded the existence of but one conspiracy and yet leveled multiple counts against the defendant, each charging conspiracy to violate a particular substantive tax code provision. The Court rejected such charge division:

> Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the

---

5. The United States's procedural arguments indicate a fundamental misconception about how default applies to a *Strickland* claim. A legion of cases recognizes that a § 2255 movant need not have presented (and usually cannot present) an ineffective assistance claim on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). Thus, when a movant makes a *Strickland* claim in his § 2255 filing, the proper response is not, as argued here, that the claim "is barred by the Defendant's waiver through failure to raise the underlying issue on appeal." *See* DE # 260 (Supplemental Brief) at 4. Couching a claim within *Strickland's* rubric does affect the substantive analysis, by invoking the *Strickland* two prong analysis, but claim waiver is not a proper route of attack in this context. *See, e.g., Howard v. United States*, 485 Fed.Appx. 125, 129 (6th Cir.2012) (chiding district court for treating *Strickland* claim as defaulted, absent cause and prejudice showing, as application of "an erroneously high legal burden" and stressing again, under *Massaro*, "that claims of ineffective assistance of trial counsel may be raised for the first time on collateral review under § 2255").

statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

*Id.* at 102. Further:

A conspiracy is not the commission of the crime which it contemplates, and neither violates nor "arises under" the statute whose violation is its object.... **The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute....** For such a violation only the single penalty prescribed by the statute can be imposed.

*Id.* (emphasis added). Under *Braverman,* then, one agreement to commit multiple crimes is not properly chargeable and punishable separately, under a lone general conspiracy statute, as multiple conspiracies.[6]

The nature of *conspiracy* takes it out of the normal *Blockburger*[7] double-jeopardy analysis forwarded by the United States, as *Braverman* itself recognized. *See id.* ("Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal

statute and from a single act which violates two statutes.") (citing *Blockburger*). Later, in *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981), the Court acknowledged that *Braverman* controls in the single-statute conspiracy context: "[T]he conspiratorial agreement in *Braverman,* although it had many objectives, violated but a single statute." *Blockburger* matters when assessing application of multiple statutes to one course of conduct, but *Braverman* governs when evaluating the propriety of multiple distinct charges under one conspiracy statute. *See also Montgomery v. United States,* 871 F.2d 1088, at *1 (6th Cir.1989) (table) ("It was proper ... to charge both of the conspiracy's objectives in one count ... because there was only one agreement to commit unlawful acts. As such, there could be only one violation of the federal conspiracy statute ... In fact, the indictment would have been defective had the government attempted to charge multiple violations of the conspiracy statute.") (citing *Braverman); United States v. Bendis,* 681 F.2d 561, 565, 564 (9th Cir.1981) (noting "functional inadequacy" of *Blockburger* "when applied to multiple counts under the same conspiracy statute" and that "[p]roviding the double jeopardy protection rec-

---

**6.** The related concepts of multiplicity and duplicity inform this analysis. Duplicity is "the joining of two or more distinct and separate offenses in a single count." 1A Charles Alan Wright et al., *Federal Practice and Procedure* § 142 (4th ed. 2012). Multiplicity is "charging a single offense in several counts." *Id.* Duplicity raises concerns about verdict unanimity, can prejudice a defendant at sentencing, and can complicate double jeopardy protection. Multiplicity presents the double jeopardy danger of multiple punishment for one offense and unfairly depicts alleged crime volume. *See id.; see also United States v. Newell,* 658 F.3d 1, 26 n. 24 (1st Cir.2011) ("Multiplicity is the converse of duplicity; it alleges that the government seeks multiple punishments for the same offense via an impermissibly repetitive indictment.").

**7.** *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), articulates the traditional "same elements" test for double jeopardy claims. *Rashad v. Burt,* 108 F.3d 677, 679 (6th Cir.1997). *Blockburger* requires a court to determine whether each charged offense "requires proof of an additional fact which the other does not." *Blockburger,* 52 S.Ct. at 182. Essentially, then, the *Blockburger* test "is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes." *Rashad,* 108 F.3d at 679. The test focuses on the potentially duplicative nature of the charges; a defendant is thus subjected to double jeopardy if the "elements of the two statutes are substantially the same." *Id.*

ognized in *Braverman* presents a peculiar problem and requires application of a different test").

The *Braverman* core is what the Sixth Circuit repeatedly has used to insulate indictments against *duplicity* arguments. Thus, many cases recognize that a single charge of conspiracy addressing multiple illegal objects is proper, as non-duplicitous, under *Braverman*. These have arisen under the general conspiracy statute and under 21 U.S.C. § 846, the statute in play here.[8] *See, e.g., United States v. Kelley,* 461 F.3d 817, 830 (6th Cir.2006) ("'The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects.'") (quoting *Braverman* ); *United States v. Boyd,* 640 F.3d 657, 666–67 (6th Cir.2011) (relying on *Braverman* to validate integrated charges); *United States v. Campbell,* 279 F.3d 392, 397–98 (6th Cir.2002) (using *Braverman* to approve a single charge of conspiracy to distribute marijuana, cocaine, and crack: "an agreement to commit several crimes is not duplicitous, as conspiracy is itself the crime"); *Montgom-*

ery, 871 F.2d at *1; *United States v. Cromer,* 436 Fed.Appx. 490, 493–94 (6th Cir.2011); *United States v. Dale,* 178 F.3d 429 (6th Cir.1999) ("It has been clear since *Braverman* that the allegation, in a single count of conspiracy, of an agreement to commit several crimes is not duplicitous, as conspiracy itself is the crime."). If charging a single § 846 conspiracy to commit multiple controlled substances act crimes is proper—because "conspiracy is itself the crime," *Dale,* 178 F.3d at 431— then splitting that one conspiracy into multiple charges would spread a singular crime over plural counts, thus violating *Braverman*.

Did this case involve a single conspiracy? Certainly, the date, location, and participant parameters are identical in the Superseding Indictment. The Sixth Circuit has adopted a multi-factorial test, which originated with *United States v. Marable,* 578 F.2d 151 (5th Cir.1978), *overruled on other grounds, United States v. Rodriguez,* 612 F.2d 906, 919 n. 35 (5th Cir.) (en banc),[9] in analyzing this issue. *See United States v. Mann,* 195 Fed.Appx.

---

**8.** These statutes are similar, but not identical. In pertinent part, section 371 makes it a crime for "two or more persons [to] conspire ... to commit any offense against the United States[.]" 18 U.S.C. § 371. Section 846 makes it a crime for any person to "conspire[ ] to commit any offense defined in" Subchapter I of the Controlled Substances Act (CSA). 21 U.S.C. § 846. The general conspiracy statute has a categorical punishment for felonies,· although if the offense object is a misdemeanor, the target crime governs the penalty. § 371. The CSA conspiracy statute ties punishment directly to the penalties "prescribed for the offense, the commission of which was the object of the ... conspiracy." § 846. Further, section 846 requires no overt act, unlike section 371.

**9.** Marable challenged successive prosecutions under § 846 for conspiracy to possess and distribute heroin and conspiracy to possess and distribute cocaine. Marable alleged that

the "government arbitrarily ... carved a single conspiracy to deal narcotics into separate heroin and cocaine conspiracies" in violation of double jeopardy protections. The *Marable* court, citing *Braverman,* applied a factorial test to determine whether there was one single agreement or separate controlled substance conspiracies. The court identified five factors: "(1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place." *Id.* at 154 (citation omitted). After applying those factors to the separate prosecutions, the court concluded that prosecution for a second § 846 conspiracy violated double jeopardy limits. *Id.* at 154–56.

430, 434 (6th Cir.2006) (applying *Marable* derivative via *United States v. Sinito,* 723 F.2d 1250, 1256 (6th Cir.1983) to find multiplicitious two charges from one § 846 conspiracy). However, here, based on the record, there is little room for debate about the singular nature of the agreement. The United States repeatedly and invariably described but one conspiracy throughout the case. *See, e.g.,* DE # 43 (U.S. Response to Bill of Particulars Motion) (referencing "the conspiracy" nine times); *id.* at 2 ("time frame ... for the existence of the conspiracy"); *id.* at 2–3 ("Specific conduct done to further the goals of the conspiracy includes the distribution of heroin and crack cocaine in Kenton and Campbell Counties."); DE # 86 (Response) at 1 ("Kelly Henderson and Preston Bell conspired with the Defendant to distribute crack cocaine and heroin over a lengthy period of time."); DE # 109 (U.S.'s Statement of Case) at 1 ("The United States alleges that the Defendant, Lazelle Maxwell, was a member of a conspiracy with Darryl Ross [and other named individuals] to distribute cocaine base (crack cocaine) and heroin in Kenton and Campbell Counties in the Eastern District of Kentucky from on or about January 2008 through May 21 2008."); DE # 170 (U.S. Closing Argument Tr.) at 24 ("All the evidence leads to Lazelle Maxwell being part of that conspiracy. In fact, some people even say he's the leader of that conspiracy."); DE # 204 (U.S. Sentencing Memo.) at 1 ("The Defendant led a conspiracy to distribute crack cocaine and heroin in Kenton and Campbell Counties in Kentucky for a period of approximately five months that ended with multiple police raids on May 21, 2008."); *id.* at 4 ("The Defendant led a large-scale drug conspiracy that distributed huge amounts of crack cocaine and heroin in this community."); *see also* DE # 233 (Sixth Circuit Decision) at 2 ("This case concerns a conspiracy to sell crack cocaine and heroin in the North-

ern Kentucky area from approximately January to May 2008."); *id.* at 20 (noting that eight witnesses labeled Maxwell as the "leader of a conspiracy to distribute large quantities of crack cocaine and heroin").

The Court doubts the substantive validity of the Indictment structure, but this is not first-instance issue presentation, such as at trial or even on direct appeal. Rather, because this claim falls within the strictures of *Strickland,* the Court must assess not whether Maxwell is right about multiplicity, but rather whether Fessler committed *Strickland* error (resulting in *Strickland* prejudice) in failing to raise and pursue the issue. Analytically, this is a step removed from the posture on direct review of a preserved claim. *Walker v. Martel,* 709 F.3d 925, 940 (9th Cir.2013) ("*Strickland* bears its own distinct substantive standard for a constitutional violation; it does not merely borrow or incorporate other tests for constitutional error and prejudice.") (citation omitted); *id.* at 941–42 ("[W]e are of course not analyzing this claim under a due process framework, but rather against ineffective assistance of counsel precedents and the test for prejudice outlined in *Strickland.*"); *see also Tomlin v. McKune,* 300 Fed.Appx. 592, 602 (10th Cir.2008) ("The Sixth Amendment right to the effective assistance of counsel is independent of any other rights that may be implicated. Indeed, there need not be a separate underlying constitutional right at all.") (citations omitted). The Court must note that *Strickland* does not assure perfect counsel, and none exists. Rather, the Sixth Amendment assures only a lawyer that performs reasonably, under prevailing professional norms, and does not cause an injury of constitutional prominence. *See, e.g., Otte v. Houk,* 654 F.3d 594 (6th Cir.2011) ("Not every bad lawyer violates the constitution. For counsel's performance to be deemed ineffective, it must be objectively deficient and

cause prejudice to the defendant.") (citing *Strickland*); *Wilson v. Sirmons*, 536 F.3d 1064, 1083 (10th Cir.2008) ("Counsel's performance must be 'completely unreasonable' to be constitutionally ineffective, not 'merely wrong.' ") (citation omitted); *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) ("So the threshold issue is not whether Morrow's attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory.").

Here, Fessler averred, "[U]pon review of the Indictment and his research thereafter, [he] found no law supporting any Objections and/or Motions to Dismiss the Indictment." DE # 251–1 (Fessler Affidavit) at 2, ¶ 9. Thus, he researched Indictment validity but did not discover what he perceived as a sound basis for challenge, though the prior discussion shows that such a basis did, in fact, exist. Critically, however, there also is Sixth Circuit authority that would at least appear directly to validate the charge structure, and Fessler's conclusion.

In *United States v. Dunn*, 269 Fed. Appx. 567 (6th Cir.2008), the Court assessed an indictment for multiplicity under plain error review. There, a defendant complained about separate convictions for conspiring to traffic cocaine base and conspiring to traffic crack. In assessing for multiplicity, the Court stated: "Charging a defendant with separate counts for different statutory criminal offenses does not violate the multiplicity rule." *Dunn*, 269 Fed.Appx. at 573 (citations omitted). *Dunn* cited to and relied on three nonconspiracy cases that characterized as separate crimes trafficking events distinguished only by involvement of a distinct controlled substance. *See id.* at 573 (citing *United States v. Pope*, 561 F.2d 663,

669 (6th Cir.1977) ("We conclude that the possession of heroin and methadone represent separate offenses ... and that the district court did not err in refusing to consolidate the two counts of the indictment into a single charge or in sentencing Appellant separately on each conviction.") (citations omitted); *United States v. Vargas–Castillo*, 329 F.3d 715, 722 (9th Cir. 2003) (applying *Blockburger* and stating: "[W]e hold that the indictment charging Vargas with separate counts [under § 841(a)(1) ] for different controlled substances was not multiplicitous and no double jeopardy violation occurred."); *id.* at 720 ("While this Court has yet to address whether charging multiple counts for different controlled substances is multiplicitous, a number of other circuits have done so. The First, Second, Fourth, Fifth, Sixth, Seventh, and Tenth Circuits have all held that charging a defendant with separate counts for different controlled substances is not multiplicitous and does not violate double jeopardy." (citations omitted)); *United States v. Davis*, 55 F.3d 517 (10th Cir.1995) ("[W]e find that possession with intent to distribute crack and possession with intent to distribute powder cocaine are separate offenses for double jeopardy purposes.")). *Dunn*, which did not reference *Braverman*, thus arguably says [10] that one § 846 conspiracy with an object to traffic in two controlled substances would support two charges because of the discrete controlled substances involved. There is more recent authority for this view, which uses *Blockburger*-type thinking even in the conspiracy realm. *See, e.g., United States v. Carson*, 447 Fed.Appx. 925, at 927 (11th Cir.2011) (confronting double jeopardy complaint about multiple punishment for conspiracy to traffic three different substances, applying *Blockburger*, noting that distinct sub-

---

**10.** Another explanation might be that there actually were **separate** conspiracies, as a factual matter, in *Dunn*, but this is not the rationale the Court itself employed.

stances typically represent distinct crimes, and stating: "Because Congress also intended for conspiracies to possess with intent to distribute to be punished in the same manner as those prescribed in 21 U.S.C. § 841, the district court properly imposed multiple sentences against Carson for each conspiracy that the jury found him guilty of committing.").

This Court cannot square *Dunn* with *Braverman* and the Sixth Circuit's firmly established duplicity cases. If the same conduct, as charged, avoids duplicity by concentrating all conspiracy objects into one count then surely an indictment arraying such objects over multiple conspiracy counts would be multiplicitous. Conceptually, a conspiracy charged under one statute cannot simultaneously be both a single crime (for duplicity analysis) and multiple crimes (for multiplicity analysis). That said, a lawyer researching the matter in 2009 may have found *Dunn* first, may have been aware of the long-standing polysubstance recognition of *Pope* (where actually trafficking in separate substances produces separate chargeable crimes), and may reasonably have viewed *Dunn* as answering the question as to a conspiracy under § 846 involving multiple controlled substances as trafficking objects. The Court is reluctant to find a violation of *Strickland* where direct appellate authority exists that would rationally (if incompletely) sanction the lawyer's analytical result.

Further, Fessler surely knew his client, if convicted, likely would be a career offender under the Guidelines. This would have meant that, upon **any** conviction here, Maxwell would have faced the same 360–life range under Guideline § 4B1.1(a) and the 2009 sentencing table.[11] The lawyer may have viewed the separate charges as functionally irrelevant to a bottom-line concern of time in custody. This notion of merged punishment does not account for *Rutledge*, which attributes constitutional significance to a concurrent term because of the additional special assessment and possible stigma from an additional conviction. However, as with the substantive analysis, Fessler would have found Sixth Circuit law telling him that a second count of overlapping punishment is of no constitutional moment.

Again, *Dunn* speaks to this concept. *Dunn* found no charging error but alternatively found no prejudice from imposition of concurrent sentences. The Court said the "concurrent 360–month sentences of each count" effectively were a "merger of the first and second counts [and] would have no practical effect on [the] sentence." *Dunn*, 269 Fed.Appx. at 573–74. This is not consistent with *Rutledge*, but many cases support the idea that " 'dual sentencing is of no real consequence.' " *United States v. Provenzano*, 200 F.3d 815 (5th Cir.1999) (quoting Fifth Circuit law and citing the Sixth Circuit's *Green v. United States*, 65 F.3d 546, 551 (6th Cir.1995) [12]).

**11.** U.S.S.G. § 4B1.1(a) defines a career offender: (1) defendant was 18 years old or older at the time s/he committed the instant offense of conviction, (2) the instant offense is a felony offense involving a controlled substance or a crime of violence, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. § 4B1.1(b) requires a sentencing court to apply the higher offense level of either the career offender designation (per the table in § 4B1.1(b), 37 on

count 1 or 2) or the otherwise applicable offense level (here, 38). That subsection also sets a career offender's criminal history at category VI. The 2009 sentencing table sets the range at 360 to life for base offense levels 37–42. *See also* DE # 226 (Sent. Tr.) at 14–15.

**12.** *Green*, a § 2255 case, expressly focused the *Strickland* prejudice inquiry on whether an error "would have had [an] effect on the length of time" the petitioner must spend in prison. *Green*, 65 F.3d at 551. *Green* preced-

Counsel may rationally have believed that *Dunn* both answered the substantive question and told him the substantive answer really did not matter much to **this** case.

The divergent authority extant when Fessler advised Maxwell in 2009 leads the Court to find that Defendant has not shown a *Strickland* violation. Fessler may well have been mistaken or incomplete in his legal analysis. However, he also could have reached a rational conclusion as to charge validity, per *Dunn*, that the Court is not prepared to characterize as so deficient that it denied Maxwell the effective assistance of counsel. A lawyer carefully exhausting the research would have discovered the conceptual problems with the Indictment but, again, this context is *Strickland*, where a lawyer is allowed imperfection. A contemporaneous Sixth Circuit parallel case that endorses the Indictment's structure excuses the attorney's failure to venture deeper into the complicated double jeopardy principles implicated, particularly given the sentencing eventualities foreseeable in the case.

The issue is a close one.[13] The Court's view that Maxwell probably should have been convicted on only one count leads to a recommendation that the District Court **deny** the motion to vacate but certify the *Strickland* multiplicity claim for appeal.

### C. Counsel's strategic management of the dual-role witnesses was valid, and Maxwell received all protections required in such a scenario.

Finally, Maxwell complains about his lawyer's handling of two testifying agents. At issue are Matthew Rolfsen (a Northern Kentucky Drug Strike Force "evidence tech") and Bill Birkenhauer (a Campbell County police sergeant and Drug Strike Force member). *See* DE # 217 (Trial Trans.—Vol. III) at 3, 40. Movant contends each served a "dual role" in the case, by giving both fact testimony as percipient witnesses and expert testimony regarding law enforcement inferences and practices. He claims Fessler should have objected to any expert testimony from the officers and, if dual-role testimony were permitted,

---

ed *Rutledge,* and the Sixth Circuit has recognized the effects of multiple concurrent sentences. *See United States v. DeCarlo,* 434 F.3d 447, 457 (6th Cir.2006) (acknowledging *Rutledge* and requiring vacation of second sentence). Courts also have treated the presence of only a second special assessment as sufficient prejudice under *Strickland. See, e.g., United States v. Bass,* 310 F.3d 321, 329–30 (5th Cir.2002) (finding additional special assessment sufficed as prejudice under *Strickland,* "albeit minimally").

**13.** The Court notes a remedial complication, should the District Court find *Strickland* error and prejudice: Normally, the remedy for a judgment reflecting multiplicity would be dismissal of one of the multiplicitous counts. *See Wieland v. Brown,* 917 F.2d 1305, at *5 (6th Cir.1990) (table) (noting that a multiplicitous indictment may be "cured through election or dismissal of counts") (citation omitted); *United States v. Buchanan,* 485 F.3d 274, 279–283 (5th Cir.2007) (reversing as multiplicitous four convictions under § 2252

and remanding with instructions to reinstate and sentence on one of the four counts); *see also United States v. Ankeny,* 502 F.3d 829, 838–39 (9th Cir.2007) (reversing and remanding with instruction to dismiss all but one of the multiplicitous counts). Here, sentencing resulted from count grouping, and under a one count analysis, Maxwell faced a 38/VI range of 360–life. *See* DE # 226 (Sent. Tr.) at 14–15. This actually exceeded the career offender result of 37/VI, which inevitably would have produced the same range. The Court found that a Guidelines range sentence was appropriate and sentenced Maxwell to 360 months. In the Judgment, however, the Court did not impose concurrent terms but rather ran the sentences **consecutively,** incorporating the statutory mandatory minima. *See* DE # 208 (Judgment). Thus, while the sentencing intent was clear—360 months, per the Guidelines, on grouped counts—the judgment technically results from consecutive sentence imposition. This may cloud the proper result should the Court find the indictment multiplicitous and find a *Strickland* violation.

should have sought prophylactic measures (pre- and post-testimony admonitions, demarcation of testimony) designed to prevent jury confusion over a witness crossing between witness categories. *See* DE ## 244 (Motion) at 14; 255 (Reply) at 20 (discussing theory). The United States contends the witness management comported with Sixth Circuit practices. *See* DE # 251 (Response) at 10.

The Court has reviewed in full the testimony by Rolfsen and Birkenhauer. Each participated directly in searches spawned by the initial cooperating source in the case, and each testified as a fact witness about the circumstances of the investigation and results of those searches. *See* DE # 217 (Trial Trans.—Vol. III) at 3–39 (Rolfsen); *id.* at 39–77 (Birkenhauer). Rolfsen did make experience/training based observations that would qualify as expert testimony. He gave opinions concerning, e.g., ledgers (*id.* at 14–15); baggies (*id.* at 19); trafficking economics (*id.* at 25); phones (*id.* at 29); drug packaging and cutting (*id.* at 29–30). Birkenhauer's testimony was almost exclusively factual. Indeed, the only arguable area of opinion regarding Birkenhauer concerned police use of line-ups and identification procedures. *See id.* at 85, 106. Significantly, that subject matter first arose on cross-examination by Fessler, not direct examination by the AUSA. Birkenhauer's testimonial focus was on explaining the factual circumstances of the searches and, in particular, the indications of connectivity between phone numbers seized in the searches. *See id.* at 58–77.

Notably absent from Maxwell's motion is any complaint over the actual *qualifications* of the witnesses. That is, while Movant chides his lawyer for not objecting to the witnesses, demanding a chance to voir dire each officer, and securing a direct ruling on admissibility of opinion testimony from the trial court, he does not contest that each witness actually was qualified to testify on the areas reflected in the transcript. At the time of trial, Rolfsen had 29 years of law enforcement experience and had been involved in the investigation of and evidence gathering in "thousands" of drug cases. *Id.* at 4, 6–8. Birkenhauer had "over 20" years of experience, mostly in narcotics-related matters. He too had handled "thousands" of drug cases. *See id.* at 39, 43. Both men had testified as experts in both state and federal court. *See id.* at 43, 9.

Fessler, as his affidavit indicates, made a strategic decision about how to approach these witnesses. *See* DE # 251–1 (Fessler Affidavit) at ¶ 10 (averring, "Affiant did not object to [the] testimony ... Affiant saw no legal or strategical reason to do so."). Counsel plainly had experience with both witnesses. *See id.* at 35 (Fessler to Rolfsen: "And I know you've seen it all[.]"); *id.* at 37 (same: "and I always defer to you in these types of situations[.]"); *id.* at 88 (Fessler to Birkenhauer: "I know you're going to use your expertise, and you've got a bunch of it, I'm not knocking you, you're much an expert and you're good at your profession[.]"). Counsel perceived any attack on the witnesses as unproductive at best or counterproductive at worst.

As to the absence of dual-role prophylactic measures, Maxwell here overstates his case. It is true that the Sixth Circuit has concerns over the dangers associated with a witness occupying both fact and expert roles. Several decisions outline the issue and steps a district court can employ to " 'ameliorate the risk of jury confusion regarding dual role testimony.' " *United States v. Dodson,* 450 Fed.Appx. 505, 510–11 (6th Cir.2011) (quoting *United States v. Lopez–Medina,* 461 F.3d 724, 744 (6th Cir. 2006)). The court generally must "take care to assure that the jury is informed of

the dual roles of a law enforcement officer as a fact witness and an expert witness, so that the jury can give proper weight to each type of testimony." *United States v. Thomas*, 74 F.3d 676, 683 (6th Cir.1996), *abrogated on other grounds by Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500 (6th Cir.1998).

Though Maxwell contends *Thomas* and *Lopez–Medina* categorically require formal testimonial demarcation and/or multiple admonitions, the cases are more nuanced. Indeed, in *Dodson*, the Sixth Circuit approved the trial court's decision to admit opinions following foundational questions but without "identifying either law-enforcement officer as an expert." *Dodson*, 450 Fed.Appx. at 510. The trial court later "gave an instruction substantially identical to Sixth Circuit Criminal Pattern Jury Instruction 7.03, explaining how the jury should weigh opinion testimony." *Id.* The Sixth Circuit held:

> [T]he trial court did not commit error, much less plain error, by admitting law-enforcement officers' opinion testimony in evidence, then giving an instruction substantially identical to Sixth Circuit Criminal Pattern Jury Instruction 7.03 in its jury-charge.

*Id.* at 511. This is almost exactly what occurred here. Rolfsen and Birkenhauer, primarily fact witnesses, gave limited opinion testimony following foundational questions. The trial judge did not flag the distinction at the time, but later included in the jury charge an instruction that substantially tracks the Sixth Circuit pattern instruction referenced in *Dodson*. *See* DE # 143 (Maxwell Jury Instructions) at 28 (Jury Instruction No. 23);[14] *see also* Sixth Circuit Pattern Jury Instruction No. 7.03 (2009 ed.). Although Fessler did not object to the witnesses or the manner of testimonial presentation, if he had objected he likely would have received much the same compliant process the trial court provided.

This means Fessler was not constitutionally ineffective in making the strategic choices he did. Such choices, of course, are classic subjects of deference under *Strickland*. The Court is loath to second guess the trench-level decisions of trial counsel regarding management of objections. An election not to object and not to seek an admonition is a matter of legitimate strategy. *See United States v. Cobbs*, 233 Fed.Appx. 524, 541 (6th Cir. 2007) ("Indeed, Cobbs may have decided not to request a cautionary instruction as a matter of strategy to avoid elevating Belcher's testimony to expert status before the jury.").

Finally, the compliant trial procedure also signals no prejudice from Fessler's choices. The Court has scrutinized the overall evidence of guilt in this case. Differences in management of dual-role witnesses would have had no effect on the trial result. First, as noted previously, the expert testimony from the two witnesses was quite limited. Rolfsen's opinions supported that trafficking had occurred at the search sites, but the fact of dealing from those homes was not really part of the defense. Rather, Maxwell focused on an identity-related theory, namely that he was not the person co-conspirators identified. None of the opinion testimony of Rolfsen or Birkenhauer implicated that defense.[15]

---

**14.** The Court did not name the witnesses subject to Jury Instruction No. 23, but Maxwell does not complain about the text of the admonition given.

**15.** Birkenhauer's limited identification testimony did not concern the pre-trial identification of Maxwell. It focused on identification of co-defendant Ross. *See* DE # 217 (Trial Trans.—Vol. III) at 85–86. Again, Birkenhauer's discussion took place on cross-examination, not on direct.

Second, the Sixth Circuit catalogued the evidence against Maxwell. The summary is important (1) because it indicates significant case strength and (2) because it contains no reference to the opinions of Rolfsen or Birkenhauer. The Court stated:

In this case, eight witnesses, several of whom were Maxwell's alleged coconspirators, identified Maxwell as the leader of a conspiracy to distribute large quantities of crack cocaine and heroin in the Northern Kentucky area. Additionally, cellular phones seized from the three locations tied to the drug sales were linked via programmed numbers to the phone number assigned to Maxwell. McIntosh, the registered owner of the cellular phone with Maxwell's assigned number, testified that she obtained this phone for Maxwell at his request. This phone number either received or made calls to Maxwell's sister on nine occasions in May 2008. Additionally, Ross, the alleged co-leader of the conspiracy along with Maxwell, testified that the co-conspirators sold approximately fifteen ounces of crack cocaine and fifteen to twenty ounces of heroin in Northern Kentucky. In light of the overwhelming evidence demonstrating Maxwell's involvement in the conspiracy, Maxwell does not meet the heavy burden of proving that the evidence was insufficient to support his conviction.

DE # 233 (Opinion Affirming) at 20.

Simply put, Fessler's decisions regarding the testimony of Rolfsen and Birkenhauer pass muster under *Strickland.* In any event, Maxwell received adequate dual-role protections. Finally, the overall record would foreclose relief, even if Fessler did err, because his handling of the issue in no way prejudiced Movant. *See also United States v. Martin,* 520 F.3d 656, 659–60 (6th Cir.2008) (upholding result under plain error review in dual-role scenario with no demarcation and no cautionary instruction but where evidence of conviction strong and no other evidentiary error occurred).[16] For any or all of these reasons, Maxwell should receive no relief on this theory.

### III. Certificate of Appealability

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 1039–40, 154 L.Ed.2d 931 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett,* 156 Fed.Appx. 771, 774 (6th Cir.2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell,* 258 F.3d 484, 487 (6th Cir.2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack,* 120 S.Ct. at 1604.

---

16. Maxwell does not legitimately cite to any other claimed error in admission of evidence by the trial court. This impacts the dual role analysis. *See Dodson,* 450 Fed.Appx. at 511 (quoting *United States v. Vasquez,* 560 F.3d 461, 470–71 (6th Cir.2009) ("This court, however, has 'declined to extend the holding in *Lopez–Medina* to circumstances in which there were no other evidentiary errors.' ")).

The charge structure issue, alleging multiplicity and a *Strickland* failure, is fairly debatable. A reasonable jurist could believe that Fessler should have delved deeply enough to uncover a meritorious argument, one that there is a fair probability would have resulted in a sentence with differences of constitutional significance. The Court should certify an appeal of the *Strickland* claim premised on *Braverman.* The remaining claims (as to temporal parameters and witness management), lack adequate merit to support a certificate of appealability.

## IV. Recommendation

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge wholly **DENY** Maxwell's § 2255 motion and grant **no** Certificate of Appealability, except as detailed herein.[17]

\* \* \* \* \* \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of fur-

ther appeal to or review by the District Court and Court of Appeals. *See United States v. Walters,* 638 F.2d 947, 950 (6th Cir.1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

---

**17.** Maxwell included a hearing request in his reply. *See* DE # 255 (Reply) at 25–26. The Court always evaluates for a hearing under Rule 8, Rules Governing Section 2255 Proceedings. 28 U.S.C. § 2255(b) requires the Court to hold an evidentiary hearing unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contra-

dicted by the record, inherently incredible, or conclusions rather than statements of fact.' " *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir.1999) (quoting *Engelen v. United States,* 68 F.3d 238, 240 (8th Cir.1995)). Here, the Court's analysis turns on the content of the Superseding Indictment, the trial record, and the law. No contested facts impact the decision, and no basis exists for an evidentiary hearing.